417 P.2d 32

**The RATON PUBLIC SERVICE COMPANY, a New Mexico corporation, Plaintiff-Appellant,**

v.

**John E. HOBBES, District Attorney of the Eighth Judicial District of the State of New Mexico, William H. Darden, Assistant District Attorney of the Eighth Judicial District of the State of New Mexico, and City of Raton, New Mexico, a municipal corporation, the State of New Mexico, Defendants-Appellees.**

No. 7795.

Supreme Court of New Mexico.

July 25, 1966.

Robertson & Robertson, Raton, for appellant.

Boston E. Witt, Atty. Gen., Oliver E. Payne, Thomas A. Donnelly, George Richard Schmitt, Myles E. Flint, Asst. Attys. Gen., Santa Fe, for appellees.

## OPINION

MOISE, Justice.

This is a declaratory judgment action brought by plaintiff-appellant, to determine whether or not it is subject to the provisions of § 5-6-17, N.M.S.A. 1953, being "An act relating to public meetings of all governing bodies of the state which are supported by public funds * * *" The State of New Mexico, as represented by the Attorney General, has appeared here in behalf of the defendants.

Appellant is a corporation organized under the general incorporation laws of New Mexico and operates the electric utility system in the city of Raton. The stock stands in the name of three trustees who hold it for the sole benefit of the city. The company is governed by a board of directors of five, three of whom are elected by the trustees, and the other two are the Mayor of Raton and one city commissioner elected by the city commission. The property making up the electric utility system is owned by the city. The arrangement between appellant and the city is covered by Ordinance No. 512, adopted in 1960.

Section 5-6-17, N.M.S.A. 1953, was adopted in 1959, and reads as follows:

"A. The governing bodies of all municipalities, boards of county commissioners, boards of public instruction and all other governmental boards and commissions of the state or its subdivisions, supported by public funds, shall make all final decisions at meetings open to the public; Provided, however, meetings of grand juries shall not be included as public meetings within the meaning of this section.

"B. Any person violating any of the provisions of this section is guilty of a misdemeanor and upon conviction shall be punished by a fine of not to exceed one hundred dollars ($100) for each offense."

We are here called on to determine if the board of directors of appellant company is a governing body of a municipality, or a governmental board or commission of a

subdivision of the state, supported by public funds. If the answer is in the affirmative, appellant would still attempt to avoid the statute as being unconstitutional and void because of its language described as indefinite, vague, and uncertain, and because of claimed defects in the title to the act.

Appellant, while recognizing that this court must construe the language of the statute to effectuate legislative intent, State v. Shop Rite Foods, Inc., 74 N.M. 55, 390 P.2d 437, to uphold, if reasonably possible, its constitutionality, State v. McKinley, 53 N.M. 106, 202 P.2d 964, and to avoid absurdity and unreasonableness, Montoya v. McManus, 68 N.M. 391, 362 P.2d 771, nevertheless argues that the statute being criminal in nature, it must be strictly construed, State v. Shop Rite Foods, Inc., supra; State v. Buford, 65 N.M. 51, 331 P.2d 1110, 82 A.L.R.2d 787.

Appellant argues further that there is an absence of certainty in § 5–6–17, N.M.S.A. 1953, in that it is unclear as to whether appellant is a "governmental board" intended to be covered by the act. Attention is directed to an attorney general's opinion (60–122) wherein a municipal hospital board was held to be included, the attorney general stating that in his opinion the word "governmental" was not used "in its traditional sense drawing a distinction between governmental and proprietary functions." Appellant asks what is meant by "governmental board" if the word "governmental" was used in the sense suggested by the opinion noted, and points out that a municipality is generally held to be operating in its proprietary capacity in running an electric utility. Kalamazoo Municipal Util. Ass'n v. City of Kalamazoo, 345 Mich. 318, 76 N.W.2d 1, 61 A.L.R.2d 583; 63 C.J.S. Municipal Corporations, § 1052(2), p. 673. See also, State ex rel. City of Albuquerque v. Lavender, 69 N.M. 220, 365 P.2d 652; 12 McQuillin, Municipal Corporations 678, § 35.35.

Appellant asserts that its sole function is of a business nature without any control over financial matters or the fixing of rates. It states that its decisions relate to personnel matters; routine day-to-day operations which are "unspectacular in the extreme" and not of a governmental nature; and that its board is not a "governing body" or "governmental board or commission"; also, that it is not a board "supported by public funds."

■ In support of appellant's contention that it is not a "governing body" or "governmental board or commission," it relies primarily on the decisions of Adler v. City Council of City of Culver City, 184 Cal.App.2d 763, 7 Cal.Rptr. 805, and Turk v. Richard, 47 So.2d 543 (Fla.1950). The first of these cases interprets a California statute providing that all meetings of the "legislative body" of local agencies shall be open to the public, and includes within

"legislative body" generally the agencies comparable to those described in § 5–6–17, N.M.S.A. 1953. In that case, it was decided that a zoning commission, being a subordinate agency created by city charter, acting independently of the governing body and pursuant to authority flowing directly from the charter, was not within the definition of "legislative body" because not a "governing" board in any sense. It was also determined that an informal meeting, where no formal action could be taken or binding agreement made, was not required by law to be public. This was the same issue discussed in Turk v. Richard, supra, but is not involved here.

Appellant maintains, however, that the rationale behind these cases, as well as the others cited by it, demonstrates the reason for legislation of this kind, and that legislative powers or governmental functions being absent, there is no reason for requiring meetings of boards like it to be public.

With this conclusion we do not agree. To our minds, the case most closely analogous to the instant one is Glick v. Trustees of Free Public Library, 2 N.J. 579, 67 A.2d 463, wherein it was held that library trustees designated by a municipality to operate the community library were included within the intent of the public purchasing act forbidding a "municipality" from entering into certain contracts unless the "governing body" shall advertise for bids, and requiring awarding the contract to the lowest bidder. We are not impressed by appellant's efforts to distinguish that case on a basis of the act involved or the language being interpreted. Rather, we are impressed with the applicability of the following, which we quote:

"A thing which is within the object, spirit and meaning of the statute is as much within the statute as if it were within the letter. Conversely, a thing which is not within the intent and spirit of a statute is not within the statute, though within the letter. Lewis' Sutherland Statutory Construction, 2d Ed., 379. When the general intent is found, general words may be retained accordingly, and those of narrower significance expanded to effectuate that intent. This is an ancient canon of construction, Eureka Consolidated Mining Co. v. Richmond Mining Co., 1877, Fed.Cas.No.4,548, 4 Sawyer 302, 317. The statute itself furnishes the best means of its own exposition; and the legislative purpose here is evident when the whole of the provision is related to the obvious policy and purpose. The intent is the essence and the life of the law."

We would direct attention to other cases wherein the technical form has not been considered controlling, and where corporate instrumentalities for accomplishing public ends, whether governmental or proprietary, have been considered to be governmental agencies. Jamestown & Newport

**540**

Ferry Co. v. Commissioner of Int. Rev., 41 F.2d 920 (1st Cir. 1930); City of Clifton v. State Board of Tax Appeals, 126 N.J.L. 205, 17 A.2d 476; Huron-Clinton Metropolitan A. v. Boards of Sup'rs, 300 Mich. 1, 1 N.W.2d 430; State Compensation Ins. Fund v. Alishio, 125 Colo. 242, 250 P.2d 1015.

■ Appellant reasons that it is not supported by public funds and is therefore not subject to § 5–6–17, N.M.S.A. 1953. It points to § 18 of the ordinance setting forth its arrangement with the city and covering "Disposition of System Revenues," where it is said:

"That so long as this franchise shall remain in valid force and effect, the Company shall set aside the entire gross income and revenues of the system into a special fund to be known as the 'City of Raton Electric Light and Power System Gross Income Fund,' herein sometimes designated as the 'Income Fund,' from which fund payments shall be made as follows:

"A. The Company shall set aside each month as an operation and maintenance fund moneys sufficient to pay the reasonable expenses of the operation and maintenance of the system as they become due and payable.

"B. The Company each month shall transfer and pay over to the City Treasurer all remaining income and revenues derived from the operation of the system for any lawful purpose or purposes then required or permitted under the Constitution and laws of the State of New Mexico and the bond ordinances and other ordinances of the City of Raton."

It would seem that our decision in McMurtry v. City of Raton, 66 N.M. 277, 347 P.2d 168, supplies a complete answer. Involved in that case were the funds collected by appellants and delivered to the City of Raton pursuant to Ordinance No. 358, being the ordinance providing for operation of the utility preceding Ordinance No. 512, under which it now operates. We there held that funds paid over to the city by the utility, not otherwise obligated, were available for payment of a judgment which had been recovered against the city. We perceive of no reason to consider that the result would have been different had § 18 of Ordinance No. 512 been in effect. Although no statement is contained in McMurtry v. City of Raton, supra, that the funds were "public funds," we can think of nothing that could have been said that would have more plainly determined this fact. The cases cited by appellant in no way detract from our holding in McMurtry v. City of Raton, supra, nor do they support appellant's position.

■ We next consider appellant's argument that the act (Chap. 120, N.M.S.L. 1959) is unconstitutional because in its title it purports to be "An Act Relating to Public Meetings of All Governing Bodies

of the State Which Are Supported by Public Funds * * *"; whereas, even conceding for the sake of argument on this point that the appellant is a board or commission of the city of Raton, it certainly is not a governing body of the state. We note that § 1 of the Act is headed *"Governing Bodies of State or Local Subdivisions to Make Formal Decisions at Public Meetings. * * *"* It is argued that under the doctrine clearly announced in Gallegos v. Wallace, 74 N.M. 760, 398 P.2d 982, the act is unconstitutional insofar as "governing bodies of local subdivisions" are concerned because the title does not include them as required by art. IV, § 16 of the New Mexico Constitution, which reads:

"The subject of every bill shall be clearly expressed in its title, * * * but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void."

We do not agree that the rule of Gallegos v. Wallace, supra, requires that the act here being considered be declared unconstitutional when attempted to be applied to appellant. In Gallegos v. Wallace, supra, we held that an act within a title purporting to cover "owners of motor vehicles" could not cover "non-owners." The question which we must determine here is whether governing bodies of local subdivisions are reasonably included within the term "all governing bodies of the state." We encounter no dif-

ficulty in concluding that they may be, if we consider that "governing bodies of the state" means "governing bodies within the state," rather than "state governing bodies." Government bodies of local governmental subdivisions within the state are governing bodies of the state in the broadest sense. We are of the opinion that the discussion in State v. Gomez, 34 N.M. 250, 280 P. 251, and the cases therein cited adequately support the conclusion that the title here is not so improper or misleading as to require a holding of unconstitutionality as asserted by appellant. In State v. Gomez, supra, complaint was made of the title to the act which stated it provided for a "tax on transfers of property" whereas, in fact, the tax was a succession tax. The court there said:

"So far as the theory of the Act is concerned, appellees properly contend that it is a 'succession tax' because it lays the burden upon the right to receive or 'succeed to' property of decedent. This does not prevent the act from also being properly called a 'transfer tax' act because that is the broadest and most inclusive term which can be used in reference to any of the so-called 'death tax' acts. * * *"

We next consider the complaint that the act is unconstitutional and void because it is so indefinite, vague and uncertain, as to deny due process of law. Principal reliance is placed on our decisions in State v. Prince, 52 N.M. 15, 189 P.2d 993, and State v. Alexander, 46 N.M. 156, 123 P.2d 724.

Although it is argued that the act is indefinite, vague and uncertain, both as to the meetings covered by it and its application, our attention is directed to nothing beyond what is discussed above concerning the question of whether a board such as appellant is covered thereby. While we appreciate that the statute is lacking in some detail and particularity, can we say it is fatally defective for this reason? State v. Thompson, 57 N.M. 459, 260 P.2d 370, contains an enlightening discussion of the rules applicable when constitutionality of a criminal statute is attacked for the reasons here asserted. We there said:

"* * * The cardinal rule in the construction of a statute is to ascertain the intention of the Legislature as it is expressed in the words of the statute, and for this purpose the whole act must be considered. The law, it is true, in its tenderness for life and liberty, requires that penal statutes shall be strictly construed, by which is meant that courts will not extend punishment to cases not plainly within the language used. At the same time such statutes are to be fairly and reasonably construed, and the courts will not by a narrow and strained construction exclude from its operation cases plainly within their scope of meaning. This intention is to be ascertained, primarily, of course, from the language of the statute, and, if the language used is plain and unambiguous, the Legislature must be understood as meaning what it expressly declared. * * *"

"* * * By the constitution of the state the legislature is invested with plenary legislative power, and the defining of crime and prescribing punishment therefor are legislative functions. In Cooley on Constitutional Limitations, 6th Ed., c. 7, p. 201, it is said:

"'* * * The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the lawmaking power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the Constitution, and the case shown to come within them.'

"It is no part of the duty of the courts to inquire into the wisdom, the policy, or the justness of an act of the legislature. Arnold v. Board of Barber Examiners, 45 N.M. 57, 109 P.2d 779. Our duty is to ascertain and declare the intention of the legislature, and to give effect to the legislative will as expressed in the laws. Asplund v. Alarid, 29 N.M. 129, 219 P. 786; In re Santillanes, 47 N.M. 140, 138 P.2d 503. Every legislative act comes before this court surrounded with the presump-

tion of constitutionality, and this presumption continues until the act under review clearly appears to contravene some provision of the Constitution. Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407; State ex rel. New Mexico Dry Cleaning Board v. Cauthen, 48 N.M. 436, 152 P. 2d 255. The courts are by the constitution not made critics of the legislature, but rather guardians of the Constitution; and, though the courts might have a doubt as to the constitutionality of the legislative act, all such doubts must be resolved in favor of the law. State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511. * * *"

Also, in that case, the decision in State v. Prince, supra, is explained. In the light of the discussion quoted above, we have no difficulty in concluding the legislation here involved is not vulnerable to the attack made against it. Compare Daniels v. Watson, 75 N.M. 661, 410 P.2d 193.

■ The intention of the legislature comes clearly through to the reader from the language used. The purpose was to provide that governing bodies dealing with public funds be required to make decisions in the open where the interested public could observe the action. To conclude that the legislature was thinking specifically of bodies such as appellant when it used the language that it did would accord to them more reason and foresight than could

be supported by the facts. However, the language used, being broad enough to include appellant, we perceive it as our duty to uphold the act and its application to appellant. The legislature, in its wisdom, having passed § 5–6–17, N.M.S.A. 1953, and appellant being within its broad terms, we are impressed that there is no reason to attempt to excuse it from the operation of the act. Our duty is to enforce the act as intended.

■ Appellant complains of the court's order that all final decisions made by appellant be made at meetings open to the public as required by § 5–6–17, N.M.S.A. 1953. Since we have here concluded that the court was correct in its determination that the act applied to appellant, the appellant has not been prejudiced by the order. It did nothing more than direct compliance with the statute held applicable to appellant. The requirement of compliance was present in the absence of the order even though not sought directly in the proceeding. However, insofar as the order may be considered to be in the nature of an injunction not to violate the statute, it is improper and without foundation in law or equity. See State v. Davis, 65 N.M. 128, 333 P.2d 613.

The cause is remanded to the district court with instructions to strike from its judgment the order not to violate the statute, and as so modified it is affirmed. It is so ordered.

CHAVEZ and COMPTON, JJ., concur.