Roger GREENE et al., Appellants,

v.

ATHLETIC COUNCIL OF IOWA STATE
UNIVERSITY et al., Appellees.

No. 2–57593.

Supreme Court of Iowa.

March 16, 1977.

Lawrence LeTourneau and Norman G.
Jesse, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., and Elizabeth A. Nolan, Asst. Atty. Gen., for appellees.

McCORMICK, Justice.

The question here is whether the athletic council of Iowa State University is subject to the open meetings statute, chapter 28A, The Code. The trial court held it is not. We hold it is and therefore reverse.

At the times material here plaintiffs were students at Iowa State University and citizens and taxpayers of Iowa. They brought this declaratory judgment action against the athletic council and its members in an effort to establish that the athletic council is subject to the open meetings law. The case was tried on stipulated evidence showing the nature, purpose and function

of the council. The trial court ruled against plaintiffs' contention, and they appeal.

■ Our open meetings statute, Code chapter 28A, became effective July 1, 1967. We said in *Dobrovolny v. Reinhardt*, 173 N.W.2d 837, 840–841 (1970), that its purpose "is to prohibit secret or 'star chamber' sessions of public bodies, to require such meeting be open and to permit the public to be present unless within the exceptions stated therein."

■ Open meetings statutes are enacted for the public benefit and are to be construed most favorably to the public. *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968). This principle is reflected in the liberal construction generally accorded such statutes. See *Arkansas Gazette Co. v. Pickens*, 258 Ark. 69, 522 S.W.2d 350 (1975); *Sacramento Newspaper Guild, etc. v. Sacramento County Board of Supervisors*, 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (1968); *Bagby v. School District No. 1,* 186 Colo. 428, 528 P.2d 1299 (1974); *Town of Palm Beach v. Gradison*, 296 So.2d 473 (Fla.1974); *Wolf v. Zoning Board of Adjustment*, 79 N.J.Super. 546, 192 A.2d 305 (1963); *Selkowe v. Bean*, 109 N.H. 247, 249 A.2d 35 (1968); *Raton Public Service Co. v. Hobbes*, 76 N.M. 535, 417 P.2d 32 (1966); *Beacon Journal Publishing Co. v. Akron*, 3 Ohio St.2d 191, 209 N.E.2d 399 (1965); *Bogert v. Allentown Housing Authority*, 426 Pa. 151, 231 A.2d 147 (1967); Annot. 38 A.L.R.3d 1070.

The public bodies whose meetings are subject to our open meetings statute are listed in § 28A.1, The Code, as follows:

All meetings of the following public agencies shall be public meetings open to the public at all times, and meetings of any public agency which are not open to the public are prohibited, unless closed meetings are expressly permitted by law:

1. Any board, council, or commission created or authorized by the laws of this state.

2. Any board, council, commission, trustees, or governing body of any county, city, town, township, school corporation, political subdivision, or tax-supported district in this state.

3. Any committee of any such board, council, commission, trustees, or governing body.

*   *   *   *   *   *

We believe the controlling issue in the present case is whether the athletic council is a "council, * * * authorized by the laws of this state", within the meaning of § 28A.1(1).

The record shows the athletic council is an entity established by administrative officials of Iowa State University to manage and control the intercollegiate athletic program of the university. Regulations of the National Collegiate Athletic Association (NCAA) and Big 8 athletic conference, of which Iowa State University is a member, require institutional control of the program.

The council consists of fifteen members, including ten faculty representatives, three alumni representatives and two student representatives. The ten faculty representatives include six elected by the faculty, two appointed by the university president, the faculty representative to the Big 8 conference, and the athletic director, who serves as an associate member.

The constitution of the athletic council declares:

Iowa State University has delegated to the Athletic Council authority and responsibility for the management and control of the intercollegiate athletic program of the University.

The constitution adds:

* * * The objective of the Council shall be the promotion and faculty control of intercollegiate athletics. The Council shall establish such policies, rules, regulations and bylaws as are necessary for the attainment of such objectives.

* * * The Council shall maintain control and integrity in all fiscal matters relating to intercollegiate athletics.

The bylaws give the council control of the office of university athletic director. They provide:

* * * In all activities related to intercollegiate athletics the Athletic Di-

rector is responsible to the Athletic Council.

The bylaws also prescribe the duties of the athletic director. His decisions, including selection of his staff and coaches, are subject to council approval.

Regarding contracts and payments, the bylaws provide:

Section 1. The Council shall have control of all funds arising from intercollegiate athletic contests and of funds from all other sources which may be devoted to intercollegiate athletics. It shall allocate such amounts of money as may be necessary for the support of various sports; but no money shall be disbursed except by the written approval of the Director of Athletics, and in compliance with fiscal policies of Iowa State University. Payments upon specific contracts relative to intercollegiate athletic contests or to salaries which have been authorized by the Council, may be made by the Treasurer with the approval of the Athletic Director.

Section 2. No contracts for intercollegiate contests shall become effective until authorized and approved by the Council. All contracts of whatever nature, purporting to bind the Council, shall be filed with the Director.

Section 3. The Athletic Council shall assume financial responsibility only for such athletic teams and athletic contests as are fully under its control.

The council also has the responsibility to determine which athletes receive university letters, scholarships and certain other awards.

Sources of revenue for intercollegiate athletics at the university include state appropriations, student fees, donations, gate receipts, concessions, and revenues from the Big 8 conference and NCAA. In the fiscal year ending June 30, 1973, the athletic council did not receive state appropriations but did obtain $2,173,050.68 from the other sources and disbursed $1,780,116.14 toward the intercollegiate athletic program of the university. The council exercised administrative discretion to determine the allocation and amount of these expenditures.

Obviously the athletic council exercises governmental powers. It is a powerful decision-making and policymaking body which acts for the public in directing and administering intercollegiate athletics at the university. It is not a mere study or advisory group. Cf. *McLarty v. Board of Regents of the University System of Georgia*, 231 Ga. 22, 200 S.E.2d 117 (1973). Although this clearly makes the council a governmental entity, we must still determine whether it is "authorized by the laws of this state" within the meaning of § 28A.1.

The powers exercised by the athletic council are delegated by the university administration. However, the university administration itself possesses those powers through delegation. They originate with a legislative grant of authority to the state board of regents.

The state board of regents is vested by statute with the authority and responsibility to govern a number of state institutions including Iowa State University. § 262.7, The Code. The regents are empowered to direct the expenditure of all appropriations made to the university and of any other moneys belonging thereto. § 262.9(7), The Code. But the regents are not required to exercise this authority without help. They may delegate statutory powers and duties to institutional officials pursuant to § 262.-12, The Code, which provides:

The board of regents shall also have and exercise all the powers necessary and convenient for the effective administrative of its office and of the institutions under its control, and to this end may create such committees, offices and agencies from its own members or others, and employ persons to staff the same, fix their compensation and tenure and delegate thereto, or to the administrative officers and faculty of the institutions under its control, such part of the authority and duties vested by statute in the board, and shall formulate and establish such rules and regulations, outline such policies and prescribe such procedures there-

for, all as may be desired or determined by the board as recorded in their minutes.

In directing the intercollegiate athletic program of the university, the athletic council exercises powers of the board of regents. Because the legislature vested authority and responsibility to govern the university and to control the expenditure of university funds in the regents, the council could not lawfully exercise its powers if it were not a body authorized to do so under Code § 262.12. University officials could not delegate these powers to the council if § 262.12 did not authorize creation of such a group for that purpose.

■ We hold that the athletic council is a "council" which is "authorized by the laws of this state," and therefore subject to the open meetings statute. See § 28A.1(1), The Code.

The trial court erred in holding otherwise.

REVERSED.

All justices concur except HARRIS, J., MOORE, C. J., and LeGRAND, J., who dissent, and REES, J., who takes no part.

HARRIS, Justice (dissenting).

I respectfully dissent in the belief the legislature did not intend the open meetings law to apply to the athletic council. I disagree the athletic council exercises governmental powers.

Neither do I agree the council essentially represents the public in directing and administering intercollegiate athletics at the university. I think the record is clear the council represents the university administration and, through the administration, the students attending the university in maintaining institutional control over the athletic program.

I do not read the record to show state appropriations are a source of revenue for intercollegiate athletics at the university. One basis for such a holding by the majority seems to be salaries paid from appropriations to some physical education department employees who spend a part of their time coaching intercollegiate track, golf,

swimming, tennis, wrestling and gymnastics. The other basis seems to be time contributed to the council by members and staff who are salaried university employees. No funds were directly appropriated for the council during the only year described in the record.

Section 28A.1(1) extends the open meetings law to boards, councils, or commissions, "created or authorized by the laws of this state." Plainly the athletic council was not "created" by the laws of this state. The question then becomes whether the council was "authorized" within the meaning of § 28A.1(1).

The majority points to § 262.12, The Code, to support their claim the athletic council is authorized by statute. That section permits the board of regents to appoint committees, offices and agencies to serve the purpose of the board of regents. But the athletic council is not appointed by the board of regents. I do not agree with the majority's expressed belief the athletic council could not lawfully exercise its powers if it were not a body authorized to do so under § 262.12. I do not understand that section to prohibit setting up boards and committees in connection with university administration. Rather I understand § 262.12 merely to authorize the board of regents to create committees, offices and agencies for its own purposes.

"Authorized" is generally defined to mean "permitted." Black's Law Dictionary, Fourth Rev.Ed., p. 169. The definition in turn is susceptible to two interpretations. Authorized might be interpreted to mean either (1) expressly permitted, or (2) not prohibited. The activities of the athletic council are not expressly permitted by any statute.

It follows then for plaintiffs to rely on § 28A.1(1) the term "authorized" has to be interpreted to mean "not illegal." I do not believe the legislature intended to extend the open meetings law to boards, councils or commissions merely because their operation is not illegal.

Section 28A.1(2) is inapplicable to the present situation because it refers only to

governing bodies of counties, cities, townships, school corporations, political subdivisions, or tax supported districts. The athletic council is not included in any of these categories.

The last relevant provision in the section, § 28A.1(3), extends the law to "any committee of any such board, council, commission, trustees, or governing body." Significantly the legislature did not extend the law to committees *appointed by* such boards, councils, commissions, trustees, or governing bodies. I believe the words "any committee of", as used in § 28A.1(3), mean committees comprised of the statutory organizations' own members. The athletic council is not made up of members of any statutory organization. Rather the council members are *appointed by* a statutory organization.

I do not believe the legislature intended to extend the open meetings law to what are essentially administrative staff meetings. Rather the legislature intended the formulation of recommendations by groups such as the faculty, administration and athletic councils of universities need not be carried on in public.

I would affirm.

MOORE, C. J., and LeGRAND, J., join this dissent.