The Attorney General has received your request for an official opinion wherein you inquire, in effect: Does the Open Meeting Act apply to meetings of the Board of Directors of a nonprofit corporation which has entered into an agency contract with a city and a public trust for the operation, maintenance and improvement of public property owned by the city and the trust and in which the city annually appropriates a sum of money to the public trust to be paid to the nonprofit corporation as an "operating fee." The scope of this Opinion is limited strictly to the applicability of the Open Meeting Act. Other legal issues which could arise from your question are not addressed. Title 25 O.S. 304 [25-304](1) (1979), defines "public body" for purposes of the Open Meeting Act as follows: " 'Public body' means the governing bodies of all municipalities located within the State of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts, task forces or study groups in the State of Oklahoma supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body. It shall not mean the state judiciary or the State Legislature or administrative staffs of public bodies, including, but not limited to, faculty meetings and athletic staff meetings of institutions of higher education, when said staffs are not meeting with the public body." (Emphasis added) In Carl v. Board of Regents, Okl., 577 P.2d 912 (1977), and Sanders v. Benton, Okl., 579 P.2d 815 (1978), the Supreme Court interpreted 25 O.S. 201 [25-201], 25 O.S. 202 [25-202] (1971), which was the predecessor of the current Open Meeting Act. Section 25 O.S. 201 [25-201] provided in part: "All meetings of the governing bodies of all municipalities located within the State of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all other boards, bureaus, commissions, agencies, trusteeships or authorities in the State of Oklahoma supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public properties, must be public meetings, and in all such meetings the vote of each member must be publicly cast and recorded." Both Sanders and Carl applied 201 to fact situations in which governing bodies subject to 201 had created what the Court called "subordinate entities" for certain purposes. In Sanders, the Department of Corrections had established a Citizens' Advisory Committee to assist the Department in making a site recommendation to the Board of Corrections for a community treatment center. In Carl, the Board of Regents had established an Admissions Board as a standing board of the College of Medicine. The Admissions Board had final authority over selection of candidates for admission to the College of Medicine. In Sanders, the Court held that the Citizens' Advisory Committee was not subject to 201 because it exercised neither actual nor de facto decision making authority for its parent entity. In Carl, on the other hand, since the Admissions Board exercised final decision-making authority over admissions to the College of Medicine, the Court held that the Admissions Board was subject to 201. The Court quoted from Sanders in the Carl decision: " 'Where a parent entity, coming within the purview of 201 as a matter of law, establishes a subordinate entity and such subordinate entity's authority is derived solely through its parent entity, the question of whether the subordinate entity may also come within the purview of 201 depends upon the purpose for which it was established and the responsibilities it exercises. If the subordinate entity in the performance of its assigned duties and responsibilities exercises actual or de facto decision-making authority, it must comply with the open meetings law.' " Section 25 O.S. 201 [25-201] is very similar to 25 O.S. 304 [25-304](1), supra, of the current Open Meeting Act. The similarity is sufficient for Sanders and Carl to be authority for the proposition that the exercise of actual or de facto decision-making authority by a subordinate entity on behalf of a parent entity that is subject to the Open Meeting Act brings the subordinate entity under the Open Meeting Act. In Greene v. Athletic Council of Iowa State University, Iowa, 251 N.W.2d 559 (1977), the Iowa Court found that an athletic council established by a state university to manage and control intercollegiate athletics was subject to the Iowa open meeting law. The Court held in pertinent part: ". . . its Iowa's open meeting statute purpose 'is to prohibit secret or star chamber sessions of public bodies, to require such meetings to be open and to permit the public to be present unless within the exceptions stated therein.' "Open meetings statutes are enacted for the public benefit and are to be construed most favorably to the public." See also Layman v. McCord, Ark., 432 S.W.2d 753 (1968), wherein the Arkansas Supreme Court held that the Arkansas Freedom of Information Act, although a penal statute, was a statute enacted for the public benefit and was to be interpreted most favorably to the public. The Court said: ". . . We have no hesitation in asserting our conviction that the Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved . . . ." In Oklahoma Ass'n. of Municipal Attorneys v. State, Okl., 577 P.2d 1310 (1978), the Supreme Court noted that one of the policies sought to be advanced by the Open Meeting Act was to facilitate an informed citizenry's right to participate in government and understand why government acts affecting their daily lives are taken. In Cross, The People's Right to Know, p. xiii, (1953), the following appears: "Public business is the public's business. The people have the right to know. Freedom of information is their just heritage. In Bell v. United Farm Agency, Okl., 296 P.2d 149, 150 (1956), in Syllabus 1, the Supreme Court held: "Statutes should be construed with reasonable meaning consonant with purpose, rather than being construed in manner which will encourage evil against which statutes are directed." In the body of the opinion, the Court said at 296 P.2d 152: ". . . Courts will not follow the letter of a statute when it leads a way from the real intent and purpose of the Legislature and to conclusions which are inconsistent with the general purpose of the act. . . ." Clearly, 25 O.S. 304 [25-304](1) of the Open Meeting Act must be given a construction, which will effectuate and not subvert the intention of the Legislature in facilitating an informed citizenry's right to participate in government and understand why government acts affecting their daily lives are taken. Oklahoma Ass'n. of Municipal Attorneys v. State, supra. Therefore, the mere absence of the words "'nonprofit corporation" in the 25 O.S. 304 [25-304](1) definition of "public body" will not in and of itself prevent a "nonprofit corporation" from becoming subject to the Open Meeting Act. Raton Public Service Co. v. Hobbes, 76 N.M. 535, 417 P.2d 32 (1966), held that a private corporation which operated a city's electric utility system, the property of which was owned by the city, was subject to the provisions of a public meeting statute providing that "the governing bodies of all municipalities, boards of county commissioners, boards of public instruction and all other governmental boards and commissions of the state or its subdivisions, supported by public funds, shall make all final decisions at meetings open to the public." The ratio decided of this decision is best illustrated by the following quotation from the Court's opinion: ". . . we are impressed with the applicability of the following, which we quote: " 'A thing which is within the object, spirit and meaning of the statute is as much within the statute as if it were within the letter. Conversely, a thing which is not within the intent and spirit of a statute is not within the statute, though within the letter. Lewis' Sutherland Statutory Construction, 2d Ed., 379. When the general intent is found, general words may be retained accordingly, and those of narrower significance expanded to effectuate that intent. This is an ancient canon of construction, Eureka Consolidated Mining Co. v. Richmond Mining Co., 1877, Fed.Cas. No. 4,548, 4 Sawyer 302, 317. The statute itself furnishes the best means of its own exposition; and the legislative purpose here is evident when the whole of the provision is related to the obvious policy and purpose. The intent is the essence and the life of the law.' "We would direct attention to other cases wherein the technical form has not been considered controlling, and where corporate instrumentalities for accomplishing public ends, whether governmental or proprietary, have been considered to be governmental agencies." See also Seghers v. Community Advancement, Inc., La., 357 So.2d 626 (1978), wherein a private, non-profit corporation sponsored by a city and parish councils and designated as an agency to administer anti-poverty programs was found to be a "public body" within the meaning of the Louisiana open meeting statute. The Court focused upon the fact that the corporation derived substantially all of its support from local, state and federal funds and had considerable policy-making authority in administering and distributing these funds. As the above cases illustrate, courts from other jurisdictions have not hesitated to apply open meetings statutes to corporate instrumentalities which have been charged with performing public functions and exercising decision-making authority on behalf of governmental entities. Such decisions have brought corporate entities within the ambit of open meetings statutes, even though the strict letter of the open meetings statutes involved may not have specifically embraced corporations exercising delegated public functions or decision-making authority. As stated in Raton Public Service Company v. Hobbes, supra, "the technical form has not been . . . controlling." Section 25 O.S. 304 [25-304](1), supra, of the Oklahoma Open Meeting Act includes within the definition of "public body" "agencies . . . supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property." Where a city annually appropriates funds to be paid to the trust, which in turn are paid over by the trust to the corporation, the corporation is "supported in whole or in part by public funds or entrusted with the expending of public funds." 25 O.S. 304 [25-304](1) (1979), supra. Where a corporation also functions as an agent on behalf of the city and the trust in operating, maintaining and improving public property owned by the city and the trust, the corporation is responsible for "administering public property." Ibid . It is good public policy to give the Open Meeting Act a liberal construction which will advance the legislative purpose of facilitating an informed citizenry's right to participate in government and understand why government acts affecting their daily lives are taken. Oklahoma Ass'n. of Municipal Attorneys v. State, supra. The corporation in question is an agent of both the city and the public trust for the purpose of administering public property and expending public funds, and the board of directors must exercise actual or de facto decision-making authority on behalf of the city and the public trust with respect to these matters. Therefore, it is the official opinion of the Attorney General that the Open Meeting Act applies to meetings of the board of directors of a nonprofit corporation, where such corporation has contracted with a city and a public trust for the operation, maintenance and improvement of public property, and where the city makes annual appropriations to the public trust to pay to the corporation as an operating fee, where such meetings are held for the purpose of discussing business concerning such matters. (Floyd W. Taylor)Disposition: ** SEE: OPINION NO. 80-213 (1980) **