The Honorable Thomas S. Bradley State Representative, 52nd District 5908 S.W. Clarion Ln. Topeka, Kansas 66610
Dear Representative Bradley:
You seek our opinion regarding the application of the Kansas open records act (KORA), K.S.A. 45-201 et seq., and the Kansas open meetings act (KOMA), K.S.A. 75-4317 et seq., to the Kansas turnpike authority (KTA).
We note that you do not ask about application of the acts to specific records or meetings. Nor do you allege any violation of the acts by the KTA. Therefore, we will discuss application of these acts in general to the KTA.
OPEN MEETINGS ACT APPLICATION
K.S.A. 68-2003 in pertinent part provides:
 "The Kansas turnpike authority shall consist of five members. Two members shall be appointed by the governor for terms of four years. The members appointed by the governor shall be residents of the state and shall each year be owners of revenue bonds issued by the Kansas turnpike authority. One member of the authority shall be the secretary of transportation. One member shall be the chairperson of the committee on transportation and utilities of the senate, and one member shall be a member of the committee on transportation of the house of representatives and shall be appointed by the speaker of the house of representatives."
The KOMA applies to:
 "all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof, receiving or expending and supported in whole or in part by public funds . . . ." K.S.A. 75-4318(a).
The above language sets forth a two-part test which must be met for a body to be included within the KOMA's provisions: 1) the body is a legislative or administrative agency of the state or one of its political or taxing subdivisions, or is subordinate to such a body; and 2) the body receives, expends or is supported in whole or in part by public funds, or, in the case of subordinate groups, has a parent or controlling body which is so supported.
The term "agency" is not defined in the KOMA; however, prior Kansas Attorney General opinions have identified four criteria to be used in determining whether a body is an agency subject to the KOMA:
 "1) If the agency has the authority to make governmental decisions and act for the state, it is covered by an open meetings law. If it only collects information, makes recommendations or renders advice, it is not. McLarty v. Board of Regents, 231 Ga. 22, 200 S.E.2d 117, 119 (1973).
 "2) Does the agency have independent authority in the exercise of its functions? Soucie v. David, 440 F.2d 1067
(D.C. Cir. 1971).
 "3) Is the agency subject to governmental audits or otherwise have its business procedures supervised? Recap v. Indiek, 539 F.2d 174 (D.C.Cir 1976).
 "4) Finally, one court has defined `governmental agency' to include corporate instrumentalities that accomplish public ends, both governmental and proprietary. Ratan Public Service Co. v. Hobbes, 76 N.M. 535, 417 P.2d 32 (1966)" Attorney General Opinions No. 87-143; 84-10; 79-284; 79-219.
Examination of the above criteria inevitably lead to our conclusion that the KTA is an agency with independent authority to make governmental decisions and to accomplish public ends. K.S.A. 68-2013 provides:
 "The exercise of the powers granted by this act will be in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of turnpike projects by the authority will constitute the performance of essential governmental functions, the authority shall not be required to pay any taxes or assessments upon the income derived from any turnpike project or property acquired or used by the authority under the provisions of this act. Any bonds issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the state."
Moreover, the Kansas Supreme Court has consistently held that the KTA is "an arm or agency of the state, created by the legislature to perform an essential governmental function," in context of the Kansas tort claims act application. Flax v. Kansas Turnpike Authority, 226 Kan, 1, 5
(1979), citing Woods v. Kansas Turnpike Authority, 205 Kan. 770 (1970);Miller v. Kansas Turnpike Authority, 193 Kan. 18 (1964); Hosterman v.Kansas Turnpike Authority, 183 Kan. 590 (1958); Anderson Cattle Co. v.Kansas Turnpike Authority, 180 Kan. 749 (1957); Pennington v. KansasTurnpike Authority, 180 Kan. 638 (1957); State, ex rel., v. KansasTurnpike Authority, 176 Kan. 683 (1954).
The Supreme Court held that this determination of status is wholly in harmony with the statutes which created and designated the authority of the KTA, K.S.A. 68-2001 et seq. Flax, 226 Kan. at 5. K.S.A. 68-2003 in pertinent part provides:
 "There is hereby created a body politic and corporate to be known as the Kansas turnpike authority. The authority is hereby constituted a public instrumentality and the exercise by the authority of the powers conferred by this act in the construction, operation and maintenance of turnpike projects shall be deemed and held to be the performance of an essential governmental function."
The KTA is a "body politic and corporate" as a county within this state shall be a "body corporate and politic" under K.S.A. 19-101. The KTA is authorized to adopt rules and regulations for the use of turnpike projects and for traffic control on such projects. K.S.A. 68-2004(8). Although the KTA is not a "taxing subdivision or authority," that does not necessarily lead to the conclusion that it is not an "agency" within the meaning of the KOMA. The KTA is created by statute, given authority to operate and maintain turnpike projects, and exempted from any taxes or assessments upon its income. It is to perform essential governmental functions as a public instrumentality. The board that governs the turnpike authority consists of the secretary of transportation, the chairperson of the senate committee on transportation and utilities, a member of the house committee on transportation selected by the speaker, and two governor appointees. We conclude that the KTA is an administrative agency of the state within the definition of the KOMA, satisfying the first element of the test. Our next question is whether the KTA receives, expends and is supported in whole or in part by public funds.
The attorney for the KTA asserts that it has never received or expended public funds and is not supported in whole or in part by public funds. It is true that the KTA does not have tax levying power, instead the KTA is authorized to provide by resolution for the issuance of turnpike revenue bonds of the authority for the purpose of paying all or any part of the cost of turnpike projects. K.S.A. 68-2007. Revenue bonds issued under the provisions of the act, K.S.A. 68-2001 et seq., shall not be deemed to constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision thereof, but all such bonds shall be payable solely from the funds provided therefore from toll revenues. K.S.A. 68-2008. Furthermore, any bonds issued by the KTA, their transfer, and the income and profit on the sale are all free from taxation. K.S.A. 68-2013.
The term "public moneys" generally means all moneys coming into the custody of the United States government or any board, commission or agency thereof, and also all moneys coming into the custody of any officer of any municipal or quasi-municipal or public corporation, the state or any political subdivision thereof, pursuant to any provision of law authorizing any such official to collect or receive the same. K.S.A. 9-701.
The KTA does not levy a tax, but raises funds by issuing revenue bonds and collecting tolls. Whatever the sources of the funds are, the money coming into the custody of the KTA, defined as a state agency, is public money within the definition of K.S.A. 9-701. Additionally, the KTA is authorized to receive and accept federal agency grants for the construction of projects. K.S.A. 68-2004(13).
Moreover, K.S.A. 68-2003 in part provides: "Members of the Kansas turnpike authority attending meetings of such authority, or attending a subcommittee meeting thereof authorized by such authority, shall be paid compensation, subsistence allowances, mileage and other expenses as provided in K.S.A. 75-3223 and amendments thereto."
K.S.A. 75-3223 sets forth how "public officers" are to be paid compensation, subsistence allowances, mileage and expenses pursuant to statute and the rules and regulations adopted by the secretary of administration. It would be absurd to assume that these public officers, who get compensated by the state for attending the board's meeting, are not required to follow the mandate of the KOMA. In short, the KOMA applies to the board of the KTA, which is an arm or agency of the state, created by the legislature to perform an essential governmental function, and receives and expends public funds and is supported by public funds.
OPEN RECORDS ACT APPLICATION
The KORA declares it to be the policy of this state that public records of public agencies "shall be open for inspection by any person . . . ." K.S.A. 45-216(a). The KORA further provides that the act is to be liberally construed and applied to promote the public policy of openness. K.S.A. 45-216(a); Harris Enterprises, Inc., v. Moore,241 Kan. 59, 63 (1987).
"Public agency" is defined as the state or any political or taxing subdivision of the state or any office, officer, agency or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state. K.S.A. 1992 Supp. 45-217(e)(1). The critical question is whether the KTA is a "public agency" within the above definition.
The KTA admits that it is an instrumentality of the state, however, it argues that we must also show that the KTA receives or expends public funds in order to subject to the requirements of the KORA. The KTA cites Attorney General Opinion No. 86-48 for support of its position that both these two elements must be satisfied for the application of the KORA. This office has consistently interpreted the language in question concluding that the KORA applies to 1) the state or any political or taxing subdivision of the state or any office, officer, agency or instrumentality thereof, or 2) any other entity receiving or expending and supported in whole or in part by the public funds. Attorney General Opinion No. 88-61 (Arkansas City Memorial Hospital subject to the KORA). The definition of public agency in K.S.A. 45-217(e)(1) does not require a body to receive, expend, or be supported by public funds to be a public entity subject to the KORA. Rather, the public funding language is in the alternative. A body is a public agency if it meets one of two tests: (1) the body is the state, a political or taxing subdivision of the state, or an instrumentality of one of these entities, or (2) the body receives or expends and is supported in whole or in part by public funds. See Frederickson, Letting the Sunshine In: An Analysis of the1984 Kansas Open Records Act, 33 U. Kan. L. Rev. 205, 206 (1985).
The KTA is a "public agency" within the meaning of the KORA by clearly satisfying the first element, and therefore, is subject to the KORA. We need not discuss the alternative element, though we have concluded earlier the KTA receives and expends and is supported by public funds. Therefore, even assuming that the KTA must satisfy both elements, the KTA is nevertheless defined as a "public agency" under the KORA. Any comments in Attorney General Opinion No. 86-48 which may be interpreted as requiring both elements are hereby withdrawn, as far as they are inconsistent with this opinion.
In conclusion, the Kansas turnpike authority, as a public instrumentality with authority to perform an essential governmental function, is a public agency within the meaning of the KOMA and the KORA. Therefore, the KTA is subject to the requirements of both the KOMA and the KORA.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Nobuko K. Folmsbee Assistant Attorney General
RTS:JLM:NKF:bas