Mr. John Wheeler Finney County Attorney 405 North Eighth Street Garden City, Kansas 67846
Dear Mr. Wheeler:
As Finney county attorney, you have requested our opinion concerning the applicability of the Kansas open records act (KORA), K.S.A. 45-201et seq., and the Kansas open meetings act (KOMA), K.S.A. 75-4317 etseq., to Southwest Developmental Services, Inc. (SDSI).
You inform us that SDSI was established in conformance with K.S.A.19-4001 et seq. According to K.S.A. 19-4001, the boards of county commissioners of two or more counties may jointly establish a community mental health center and/or community facility for the mentally retarded. Further, the board of county commissioners of any county which is not a part of a community mental health center is authorized to contract with a community mental health center and/or community facility for the mentally retarded organized in accordance with the provisions of K.S.A. 19-4001 et seq., for such mental health services and/or mental retardation services for the residents of such county as may be mutually agreeable between the governing board of the center and/or community facility for the mentally retarded and the county commissioners. K.S.A.19-4010. You inform us that SDSI is a community facility for the mentally retarded having a contractual relationship with thirteen counties.
K.S.A. 1993 Supp. 19-4002 provides in part:
 "(a)(1). . . . every county which establishes a mental health center or facility for the mentally retarded shall establish a community mental health or mental retardation governing board. Every county which wants to establish such board for the purpose of allowing such board to contract with a nonprofit corporation to provide services for the mentally retarded may establish a mental retardation governing board in accordance with the provisions of this section. Any board established under this subsection shall be referred to as the governing board. The governing board shall be composed of not less than seven members. The members of such governing board shall be appointed by and shall serve at the pleasure of the board of county commissioners of the county.
 "(2) When any combination of counties desires to establish a mental health center or facility for the mentally retarded, the chairperson of the board of the county commissioners of each participating county shall appoint two members to a selection committee, which committee shall select the first governing board. Each participating county shall have at least one representative on such board."
The duties of the governing board include election of officers, exclusive control over the expenditure of all moneys, formulation of policies, evaluation of the services provided and reporting to the county commissioners. K.S.A. 19-4003.
K.S.A. 19-4006 further states:
 "Upon the creation of any such governing board, all of the jurisdictions, powers, and duties now conferred by law upon the county board of health of such county, or of a joint board of health of such county and a municipality with respect to mental health, shall be withdrawn from such county or joint board of health and conferred upon such governing board."
The services that a nonprofit corporation can provide are: "[p]re-school, day care, work activity, sheltered workshops, sheltered domiciles, parent and community education and, in collaboration with other agencies when practical, clinical services, rehabilitation services, in-service training for students entering professions dealing with the above aspects of mental retardation, information and research." K.S.A. 19-4001.
We are not provided with any information regarding the governing board established by the board of Finney county commissioners or of any other counties contracting with SDSI. A copy of an agreement for services in 1993 bears signatures of the Finney county commissioners and the executive director/vice president of SDSI. We are further uncertain whether Finney county is a part of a community mental health center, under K.S.A. 19-4010. If Finney county is not, then it is authorized to contract with a community facility for the mentally retarded as may be mutually agreeable between the governing board of the community facility for the mentally retarded and the county commissioners. K.S.A. 19-4010.
OPEN MEETINGS ACT APPLICATION
The KOMA applies to:
 "all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof, receiving or expending and supported in whole or in part by public funds. . . ." K.S.A. 75-4318(a).
The above language sets forth the two-part test which must be met for a body to be included within the KOMA's provisions: 1) the body is a legislative or administrative agency of the state or one of its political or taxing subdivisions, or is subordinate to such a body; and 2) the body receives, expends or is supported in whole or in part by public funds, or, in the case of subordinate groups, has a parent or controlling body which is so supported.
We have virtually no information on the board of directors of SDSI, regarding its selection, relationship with the county, and responsibilities. These matters are important in deciding whether SDSI is a subordinate body of a public agency for purposes of the KOMA.
If SDSI is a community facility for the mentally retarded organized in accordance with the provisions of K.S.A. 19-4001 et seq., then its governing board is clearly a public agency within the meaning of the KOMA. However, if SDSI is not a community facility, but a nonprofit corporation which contracts to provide certain services for the county, we need further analysis. The board or boards of county commissioners may contract with the nonprofit corporation to provide either mental health services or services for the mentally retarded, or both such services, pursuant to K.S.A. 19-4007. This provision of the statutes also provides that such nonprofit corporation may not deny service to anyone because of inability to pay for the same and it must submit an annual financial report to the board or boards of county commissioners, and an activities report to the secretary of the department of social and rehabilitation services (SRS). Such nonprofit corporation must be approved by SRS in order to receive public funds raised through taxation or public solicitation. K.S.A. 19-4007. In Attorney General Opinion No. 81-171, we stated that a county is empowered by K.S.A. 19-4007 to contract with one or more non-profit corporations for the provision of services to the mentally retarded, and to fund such contracts from the proceeds of the tax levied pursuant to K.S.A 19-4004.
The term "agency" is not defined in the KOMA. However, prior Kansas Attorney General opinions have identified four criteria to be used in determining whether a body is an agency subject to the KOMA:
 "1) If the agency has the authority to make governmental decisions and act for the state, it is covered by an open meetings law. If it only collects information, makes recommendations or renders advice it is not. McLarty v. Board of Regents, 231 Ga. 22, 200 S.E.2d 117, 119 (1973).
 "2) Does the agency have independent authority in the exercise of its functions? Soucie v. David, 440 F.2d 1067
(D.C. Cir. 1971).
 "3) Is the agency subject to governmental audits or otherwise have its business procedures supervised? Recap v. Indiek, 539 F.2d 174 (D.C. Cir. 1976).
 "4) Finally, one court has defined `governmental agency' to include corporate instrumentalities that accomplish public ends, both governmental and proprietary. Ratan Public Services Co. v. Hobbes, 76 N.M. 535, 417 P.2d 32 (1966)" Attorney General Opinion No. 93-130; 87-143; 84-10; 79-284; 79-219. [The Kansas Supreme Court essentially struck this last test in Memorial Hospital Ass'n, Inc. v. Knutson, 239 Kan. 663 (1986).]
We have previously dealt with the issue of application of the KOMA to what appear to be similar non-profit corporations. We have concluded that Cowley County Developmental Services (CCDS) and Project Independence are administrative bodies which receive and expend public funds, therefore, they were subject to the KOMA. Attorney General Opinion No. 87-188. We distinguished the ruling in Knutson on factual grounds, stating that the hospital was an independent entity not subject to any governmental control, whereas the CCDS and Project Independence must meet SRS guidelines and obtain its approval on their budget and program.
In State ex rel. Murray v. Palmgren, 231 Kan. 524 (1982), the court found that the board of trustees of a county hospital which ran the hospital was a public body which was subject to the KOMA. However, if the board leased the hospital property to another, the lessee is not subject to the open meetings requirement of the KOMA if the lessee: 1) has no governmental decision-making authority to expend public funds, and 2) is an independent entity which by contract agrees to provide hospital services under a lease of hospital property from a board of trustees.Knutson, 239 Kan. at 672.
SDSI is subject to close monitoring by the county in budgetary matters, and by SRS with regard to programs provided. SDSI provides services for the mentally retarded residents of the county in compliance with the statutes. We conclude that the first prong of the test for KOMA application is satisfied because, SDSI is an agency of the county and SRS, is under the supervision of those governmental entities, providing the same services which could have been provided by the county or SRS.
We are informed that SDSI received $692,550 from tax levies from the participating counties as authorized by K.S.A. 19-4004, $4,744,383 in federal funds and $3,432,551 in state funds in 1994. It is clear that SDSI receives, expends and is supported by public funds, thus satisfying the second prong of the test as well.
OPEN RECORDS ACT APPLICATION
The KORA declares it to be the policy of this state that public records of public agencies "shall be open for inspection by any person. . . ." K.S.A. 45-216(a). The KORA further provides that the act is to be liberally construed and applied to promote the public policy of openness. K.S.A. 45-216(a); Harris Enterprises, Inc., v. Moore,241 Kan. 59, 63 (1987).
"Public agency" is defined as the state or any political or taxing subdivision of the state or any office, officer, agency or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by public funds appropriated by the state or by public funds of any political or taxing subdivisions of the state. K.S.A. 45-217(e)(1).
A body is a public agency if it meets one of two tests: (1) the body is the state, a political or taxing subdivision of the state, or an instrumentality of one of these entities, or (2) the body receives or expends and is supported in whole or in part by public funds. Attorney General Opinions No. 93-130 (Kansas turnpike authority subject to the KORA); 88-61 (Arkansas city memorial hospital subject to the KORA). See
Frederickson, Letting the Sunshine In: An Analysis of the 1984 KansasOpen Records Act, 33 U. Kan. L. Rev. 205, 206 (1985).
SDSI is a "public agency" within the meaning of the KORA by clearly satisfying the second element. According to the agreement between the board of Finney county commissioners and SDSI, the county was to levy up to $202,800 upon all taxable tangible property in the county as provided by K.S.A. 19-4004 for the purpose of providing revenue to pay for services for the developmentally disabled residents, and pay the amount to the board of directors of SDSI. It clearly receives and expends and is supported by the public funds in the form of taxes levied by the counties and state and federal grants through SRS.
We are informed that SDSI does not dispute the fact that it receives public funds, however, it argues that the exception to the definition of "public agency" applies. K.S.A. 45-217(e)(2) provides:
 "Public agency" shall not include: "(A) Any entity solely by reason of payment from public funds for property, goods or services of such entity. . . ."
It is true that the counties have contracted SDSI to provide certain services to the developmentally disabled residents. However, we do not believe that this exception applies to SDSI under the circumstances. A commentator explains the application of this exception as follows:
 "According to legislators, this is designed to exempt vendors who merely sell goods or services to government, for example, the company that sells gravel to the city street department or the bottling company that maintains soft drink machines in the courthouse. Insofar as purchases are made with public money, however, the records of agencies that make the purchases must be open to the public.
 "One unresolved question is whether consultants that sell government-like `services' to the public agency are subject to the act, such as the planning consultant who studies a downtown mall project for a city. The legislators who sponsored the act and the chairmen of committees who handled the bill agree that the definition was not meant to exclude consultants hired to perform `governmental functions.' Rather, it was designed to exclude businesses that provide necessary but nongovernmental services, such as a janitorial company that contracts to clean city hall. Courts considering this issue should look at the nature of the services provided to determine whether the private contractor is a public agency subject to the act. It would be inappropriate to force a private business to open its records to the public merely because that firm has sold soft drinks, gravel, or janitorial services to a public agency. But when an outside firm is hired to perform a function that is clearly governmental in scope, that firm ought to be required to open its records concerning those services. Otherwise, agencies might escape public scrutiny on any issue merely by hiring outside firms to perform the governmental functions required." Frederickson, Letting the Sunshine In: An Analysis of the 1984 Kansas Open Records Act, 33 Univ. Kan. L. Rev. 205, 216-17 (1985).
Pursuant to K.S.A. 19-4001 et seq., the county may establish a community mental health center and community facility for the mentally retarded, or contract with a non-profit corporation to provide such services. The SDSI is not simply selling goods to the county, but it is organized, operated, and financed according to the provisions of the act, in order to provide governmental services to the residents. It is illogical to say that the county may escape public scrutiny merely by contracting the outside firm to provide the same services which could be offered by the county itself.
In determining whether a similar non-profit corporation is a quasi-municipal corporation for the purposes of K.S.A. 9-1401 et seq., we have stated:
 "[I]t is apparent that Big Lakes Developmental Center, Inc. is not merely a non-profit corporation which has entered into an arms-length transaction with the four counties to provide services for the developmentally disabled. Rather, through the control of the board of directors by the four county commissions, the center has become an agency of county government, providing services which each county would otherwise provide itself." Attorney General Opinion No. 83-184.
The exception in K.S.A. 45-217(e)(2) is inapplicable to SDSI under the circumstances of the facts provided.
In conclusion, the board of directors of SDSI is a "public body" within the meaning of the KOMA, therefore it must comply with the requirements of the KOMA. Furthermore, SDSI receives, expends and is supported by various sources of public funds and it is not a mere contractor with the government which receives payment in exchange for services and goods. Therefore, the KORA applies to SDSI.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Nobuko K. Folmsbee Assistant Attorney General
RTS:JLM:NKF:bas