**R. B. CARL, M.D., and State of Oklahoma ex rel. Larry Derryberry, Attorney General, Appellants,**

v.

**BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA, Appellee.**

**No. 50591.**

Supreme Court of Oklahoma.

April 11, 1978.

Gerald E. Weis, Asst. Atty. Gen., Larry Derryberry, Atty. Gen. of Oklahoma, for appellants.

Kurt F. Ockershauser and Beverly E. Ledbetter, Legal Counsel, University of Oklahoma, Norman, for appellee.

IRWIN, Justice.

The Admissions Board of the College of Medicine of the University of Oklahoma selects the students who will be admitted to the College of Medicine. The Admissions Board's meetings and all aspects of its selection processes are closed to the public.

R. B. Carl, M.D., a member of the Admissions Board, commenced proceedings to enjoin the Board of Regents of the University of Oklahoma (appellee) from allowing the Admissions Board to meet in closed sessions, alleging that the Admissions Board was subject to the then existing "Open Meeting Law", 25 O.S.1971, § 201.[1] The State of Oklahoma ex rel. Larry Derryberry, Attorney General, sought and was granted permission to intervene as a party plaintiff. A hearing was conducted and judgment was entered for appellee.[2] Dr. Carl and State (appellants) appealed.

The University of Oklahoma is governed by the Board of Regents of the University of Oklahoma. Art. XIII, § 8, Okla.Const. The College of Medicine is a component College of the University. The Admissions Board is a standing board of the College of Medicine whose membership is appointed by appellee with the advice of the College of Medicine Administration. The Admissions Board is composed of 54 members, including 20 faculty, 10 senior medical students and 24 physicians recommended by the Oklahoma State Medical Association.

The Board of Regents of the University of Oklahoma, being the "government" of the University, has established the manner in which medical students would be selected. The final responsibility of selecting the students was delegated to the Admissions Board and it acts within the framework of the requirements, rules and policies established and enforced by appellee.

The Admissions Board evaluates candidates for admission under a two part criteria, one part objective and the other subjective. Objective criteria is primarily the numerical ranking of candidates on the basis of entrance exam test scores and undergraduate grade point averages. Subjective criteria involves evaluation of personal history, background and subjective data.

1. Oklahoma's then existing "Open Meeting Law" (25 O.S.1971, § 201) in pertinent part, provided:

"All meetings of the governing bodies of all municipalities located within the State of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all other boards, bureaus, commissions, agencies, trusteeships or authorities in the State of Oklahoma supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public properties, must be public meetings, and in all such meetings the vote of each member must be publicly cast and recorded."

"Executive sessions will be permitted only for the purpose of discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any public officer or employee; provided, however, that any vote or action thereon must be taken in public meeting with the vote of each member publicly cast and recorded."

"Any action taken in violation of the above provisions shall be invalid."

\* \* \* \* \* \*

The above statute was repealed in 1977 (See 1977 Session Laws, Ch. 214). Oklahoma's present "Open Meeting Laws" are 25 O.S.Supp. 1977, § 301 et seq.

2. The Trial court concluded:

"Admissions board found not to be a 'governing' or policy-making body of the O. U. Medical School, and since members serve without compensation, such Board is not 'supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public properties.' It is found to be assigned sensitive and confidential duties and responsibilities more comparable to those involving personnel where even governing bodies are permitted to meet in executive sessions closed to the public. Plaintiff's request for injunctive relief requiring open meetings while investigating and discussing applications of medical students for admission denied, exceptions allowed."

In seeking to uphold the trial court judgment appellee contends that sec. 201, supra, pertains only to meetings of governing bodies and does not include a "non-governing" board such as the Admissions Board which has no power to govern. In the alternative, appellee contends that if it is determined that the Admissions Board is subject to such law, the law is discriminatory, denies equal protection of the laws and constitutes a clearly unwarranted governmental invasion of privacy.

Appellee argues for a construction essentially the same as that given the 1967 amended versions of § 201, supra, in a 1968 Attorney General's opinion. Okl.Op.A.G. 68–231. The 1968 opinion concluded the open meeting law as then enacted applied only to "governing bodies". Such construction was predicated upon 25 O.S.Supp.1967, § 201, which provided in pertinent part:

"All meetings of the governing bodies of any state or local department board, commission, authority, agency, division, subdivision or trusteeship including municipalities, counties and school districts, supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public properties, shall be conducted in sessions open for the attendance of the public, . . . ."

It is obvious the Legislature broadened the scope of the "open meeting law" in its 1971 amendatory enactment. Certain public entities, such as the governing bodies of municipalities, the boards of county commissioners of the several counties, the Board of Regents of the University of Oklahoma (appellee) and other statutory and constitutional entities came within the purview of the 1971 enactment as a matter of law.

It is clear that the Legislature did not intend to open for public scrutiny the meetings of governing public bodies, such as the Board of Regents, and leave in the dark other public entities which have no governing authority but do have decision-making authority. It is equally clear the Legislature did not intend to open for public scruti-

ny the meetings of a parent entity, such as the appellee, who came within the purview of sec. 201, as a matter of law, and leave in the dark its subordinate entity, such as the Admissions Board, which was established for the purpose of selecting medical students for and on behalf of the Board of Regents. See *Arkansas Gazette Company v. Pickens*, 258 Ark. 69, 522 S.W.2d 350 (1975).

In *Sanders v. Benton, Director of the State Board of Corrections*, Okl., 579 P.2d 815 (1978), decided this date, we considered decisions of other jurisdictions involving their open meeting laws. In *Sanders* we discussed *IDS Properties v. Town of Palm Beach*, Fla.App., 279 So.2d 353 (1973), decided by the Fourth District Court of Appeals of Florida, and review of that decision on Certiorari to the Florida Supreme Court, and cited as *Town of Palm Beach v. Gradison*, Fla., 296 So.2d 473 (1974); *Mclarty v. Board of Regents of the University System of Georgia*, 231 Ga. 22, 200 S.E.2d 117 (1973); and *Washington School District No. 6 v. Superior Court*, 112 Ariz. 335, 541 P.2d 1137 (1975). And we also discussed *Greene v. Athletic Council of Iowa State University*, Iowa, 251 N.W.2d 559 (1977). In *Greene*, the Iowa Court held that an Athletic Council, consisting of faculty, alumni and student representatives, which was established by administrative officials to manage and control intercollegiate athletic programs at the university, was vested with the responsibility to determine the athletes who would receive letters, scholarships and awards, and which exercised the powers of the regents in directing intercollegiate athletic programs, was subject to the Iowa open meeting laws.

In the *Sanders* case we held that a Citizens' Advisory Committee, empaneled for the purpose of furnishing information, evaluations and recommendations to the Board of Corrections for a proposed location of a Community Treatment Center, did not come within the purview of sec. 201, supra. Our holding was based on a conclusion that the Citizens' Advisory Committee did not possess or exercise decision-making authori-

ty, either actual or de facto. Therein, we said:

"Where a parent entity, coming within the purview of § 201 as a matter of law, establishes a subordinate entity and such subordinate entity's authority is derived solely through its parent entity, the question of whether the subordinate entity may also come within the purview of § 201 depends upon the purpose for which it was established and the responsibilities it exercises. If the subordinate entity in the performance of its assigned duties and responsibilities exercises actual or de facto decision-making authority, it must comply with the open meetings law. Under such circumstances, the fact the subordinate entity may or may not be supported in whole or in part by public funds would not be controlling. In the absence of any exercise of actual or de facto decision-making authority by the subordinate entity, as for example in the performance of purely administrative or ministerial tasks, the provisions of § 201 are not called into play. Here also, any consideration of whether the subordinate entity is or is not supported in whole or in part by public funds would not be controlling. Full or partial publicly funded support is one of the criteria used to determine which parent entities not otherwise defined by express language in § 201 or within its terms as a matter of law by reason of their constitutional or statutory origin, would come within the purview of the open meetings law."

■ In the case at bar, the parent-entity is the appellee, the Board of Regents of the University of Oklahoma, and it comes within the purview of sec. 201, as a matter of law by reason of its constitutional origin. The Admissions Board is a subordinate entity of the Board of Regents and exercises decision-making authority for the Board of Regents, i. e., selects the medical students for the College of Medicine.

■ We hold that the Admissions Board comes within the purview of sec. 201, supra, and appellant was entitled to the relief prayed for unless other contentions advanced by appellee precluded its operative effect against the Admissions Board.

■ Appellee argues in the alternative that should this Court decide the Admissions Board is subject to § 201, supra, the provisions thereof would be unconstitutional as discriminatory and a denial of equal protection. Furthermore, appellee contends § 201, supra, as applied to the Admissions Board, operates as an unlawful invasion of privacy. Appellee's constitutional argument is without merit.

Assuming, as asserted by appellee, that some governmental entities are not subject to § 201, supra, this fact is no foundation for any denial of constitutional rights to the Admissions Board. This is because it has no rights, privileges and immunities protectable under the Federal or State Constitutions. Substantive due process and equal protection guarantees run to "persons", not the state. Their purpose is to protect persons from the abuses of the state's power. Thus, it has been held that a municipal corporation being a creature of the state, cannot invoke the equal protection clause of the Fourteenth Amendment against an act of the state legislature. *Williams v. Baltimore*, 289 U.S. 36, 77 L.Ed. 1015, 53 S.Ct. 431 (1933).

Appellee contends that the public's right to know is affected by two considerations—the public's need to know balanced against the individual's right to privacy. Appellee argues it would be inconceivable that the public interest would be advanced by permitting public access to the facts regarding applicant's background, personal family and medical history. Appellee suggests that personal matters involved in the student selection process are as confidential and personal as those matters contained in the welfare records and protected by 56 O.S. 1971, § 183.

■ Persons and things may be grouped into different classifications for governmental purposes so long as the basis for the classification is not "invidiously discriminatory" nor in derogation of some fundamental right of the persons classified. Assum-

ing neither of the classic hallmarks of per se denial of equal protections are presented, the traditional test reduces itself to an inquiry as to whether there is "some rational basis" for the classification. *McFall v. City of Shawnee*, Okl., 559 P.2d 433 (1976); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed. 16 (1973). Appellee offers no satisfactory suggestion as to why it is irrational to protect the privacy of welfare information, and to not provide similar protection for personal information accompanying medical school admission applications.

Appellee also contends compliance with § 201, supra, would require the Admissions Board to violate federal privacy laws, hereafter referred to as the Buckley Amendment. 20 U.S.C. § 1232. While privacy rights are generally considered personal to the individual, appellee may have some legitimate interest in compliance with the provisions of the Buckley Amendment since failure to adhere to its privacy dictates could result in loss of federal funding. 20 U.S.C. § 1232g(b)(1) & (2). Assuming arguendo, appellee has standing to raise the possible application of the Buckley Amendment, it would appear that as presently construed the Buckley Amendment has no application to the medical school admission process. "Student" as defined by the federal statute [20 U.S.C. § 1232g] is:

"  .  .  .  any person with respect to whom an educational institution maintains educational records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution.  .  .  ."

Implementing regulations of the Department of Health, Education and Welfare, 41 C.F.R. § 99.3, provide further:

"A person who has applied for admission to, but has never been in attendance at, a component unit of an institution of post-secondary education (such as the various colleges and schools which comprise the university), even if that individual is or has been in attendance at another component unit of that institution of post-secondary education, is not considered to be a student with respect to the component to which an application for admission has been made."

We are not here presented with any inherent conflict between compliance with the provisions of § 201, supra, and any existing privacy legislation. However, should such conflict arise at some later date, it would not appear to present insurmountable problems. See *Gillies v. Schmidt*, Colo.App., 556 P.2d 82 (1976).

JUDGMENT REVERSED.

HODGES, C. J., and DAVISON, WILLIAMS, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.