E. C. "Sandy" SANDERS, Ruth Sanders, and others similarly situated, Appellants,

v.

Dr. Ned BENTON, Director of the Department of Corrections, Frank E. Carey, Jr., Leroy W. Kirk, Chester T. Curtin, Seth Millington, Mrs. Patricia A. Montgomery, William E. Thompson, Gary M. Cook, Individually and as members of the State Board of Corrections, and the State Board of Corrections, Appellees.

No. 50471.

Supreme Court of Oklahoma.

April 11, 1978.

Rehearing Denied June 14, 1978.

E. W. Keller and Paul F. Fernald, Keller, Fernald & Bykerk, Oklahoma City, for appellants.

Paul Crowe, Asst. Atty. Gen., Larry Derryberry, Atty. Gen. of Oklahoma, Oklahoma City, for appellees.

IRWIN, Justice.

E. C. "Sandy" Sanders and Ruth Sanders (appellants) brought an action on behalf of themselves and others similarly situated to have declared invalid the selection of the Suntide Inn in Oklahoma City as a Community Treatment Center, and to secure a temporary injunction to prohibit the Board of Corrections and the Department of Corrections (appellees) from implementing the selection decision. Appellants alleged, inter alia, that the Citizens' Advisory Committee, impaneled to provide information and to assist the Department of Corrections (Department) in making recommendations to the Board of Corrections (Board) concerning proposed locations for a Community Treatment Center, failed to comply with Oklahoma's then existing "Open Meeting Laws",[1] and such failure rendered the selec-

1. Oklahoma's then existing "Open Meeting Law" (25 O.S.1971, § 201) in pertinent part, provided:

"All meetings of the governing bodies of all municipalities located within the State of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all other boards, bureaus, commissions, agencies, trusteeships or authorities in the State of Oklahoma supported in whole or in part by public funds or

tion invalid. The district court denied appellants any relief and they appealed.

The Legislature authorized the Department, which is under the supervision and control of the Board, to establish Community Treatment Centers for the housing of certain classes of criminal offenders. 57 O.S.Supp.1975, § 504.1 et seq. Department staff sought and obtained the participation of a number of private citizens in the Oklahoma City area to serve on a Citizens' Advisory Committee. Members of the committee were informed of the Board's selection responsibilities and were requested to provide information and to assist the Department in making a site recommendation to the Board by evaluating a number of potential locations available for use. Members were given a list of potential sites, requested to view them and to numerically rate each site on a standard criteria. Not all the members visited all the potential locations and members were free to suggest locations not contained on the prepared list. After viewing some or all of the locations suggested, members mailed their evaluation sheets to Department staff for compilations. The compiled evaluations showed the Suntide Inn to be the consensus selection of the Committee. This opinion was confirmed after discussions at Committee's fourth and final meeting. Although the evidence is in conflict, we will assume for the purpose of this decision only, that at least part of the Committee's meetings were not open to the public.

Department staff presented the Committee's evaluations to Board in the form of a report which listed the Committee's four top choices in order of preference. Also submitted to Board were the reports of Department staff, prepared independently of the Advisory Committee report, as the Department's four top choices in order of preference. Both reports stated Suntide Inn was the most favored location and both reports listed the same alternative preferences although in different orders of desirability. Board, in an open meeting, selected Suntide Inn as the location for one of the treatment centers.

Appellants contend that for all practical purposes, Board, acting through Department, assigned the task of finding a Community Treatment Center in Central Oklahoma to the Citizens' Advisory Committee. Reduced to the bare essentials, the facts show Committee conducted an investigation and submitted its evaluations and recommendations for use by Board. Board adopted as the site for the treatment center the site which was the consensus recommendation of the Committee. Appellants contend that the committee was acting for and on behalf of the Board in selecting the site for the treatment center and in making the selections, the Committee had to comply with the open meeting laws. Appellants argue that the Committee's failure to so comply renders the site selection void.

Appellee responds that Committee was not a "governing" body in that it had neither express nor implied decision-making authority. It argues that Committee did not by its activities bind, control or otherwise determine what the end result of the decision-making process would be. In the absence of any meaningful decision-making authority, appellee's position is that Committee did not come within the purview of the open meeting law. The issue is thus framed, what brings an entity within the purview of the open meeting laws? Only if we determine the Committee did come within the scope of the then existing open

entrusted with the expending of public funds, or administering public properties, must be public meetings, and in all such meetings the vote of each member must be publicly cast and recorded."

"Executive sessions will be permitted only for the purpose of discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any public officer or employee; provided, however, that any vote or action thereon must be taken in public meeting with the vote of each member publicly cast and recorded."

"Any action taken in violation of the above provisions shall be invalid."

\* \* \* \* \* \*

The above statute was repealed in 1977 (See 1977 Session Laws, Ch. 214). Oklahoma's present "Open Meeting Laws" are 25 O.S.Supp. 1977, § 301 et seq.

meeting law would it become necessary to determine if Committee's failure to comply operated to invalidate the site selection.

Appellants principally rely on *IDS Properties v. Town of Palm Beach*, Fla.App., 279 So.2d 353 (1973), decided by the Fourth District Court of Appeals of Florida; and review of that decision on Certiorari to the Florida Supreme Court, and cited as *Town of Palm Beach v. Gradison*, Fla., 296 So.2d 473 (1974). There, the Town of Palm Beach sought to have prepared a comprehensive plan under which outdated zoning ordinances would be updated and revised into a zoning code. A citizens' planning committee was appointed by the town council to deliberate with and assist a private planning consultant in the preparation of the plan which was to be submitted to the council for approval. Both the Florida Court of Appeals and the Florida Supreme Court held the citizens' committee was within the scope of the Florida "sunshine" law.

Appellants assert the Florida case is directly in point. While the two Florida decisions have been cited for the proposition that an advisory committee which makes evaluations and submits its recommendations to a decision-making entity comes within the purview of the open meeting laws, both courts bottomed their decision on a broader basis. The Florida Sunshine law is applicable to all meetings of any board or commissions of any state agency or authority of any county, municipality, etc., at which official acts are to be taken. As envisioned by both courts, the citizens' committee there involved reached the status of a board or commission and had been delegated de facto authority to act on behalf of the town council. In its opinion, the Florida Court of Appeals said:

> "The zoning was * * * not conceived eo enstanti at the public meetings held by the Town Council and the Zoning Commission. It was the product of the deliberations and actions of the Citizens' Planning Committee acting as the alter ego of the Town Council. The action of the Citizens' Planning Committee was an indispensable requisite to and integral part of the "official acts" or "formal action" of the Town Council".

> "It is axiomatic that public officials cannot do indirectly what they are prevented from doing directly. Those to whom public officials delegate de facto authority to act on their behalf in the formulation, preparation and promulgation of plans on which foreseeable action will be taken by such public officials stand in the shoes of such public officials insofar as the application of the Government in the Sunshine Law is concerned."

The Florida Supreme Court in its decision found that:

> "* * * the Council delegated to the committee much of their administrative and legislative decisional zoning formulation authority which is ordinarily exercised by a city-governing body itself and particularly the position of the process where the affected citizens expect to be heard. Thus the nature of the committee and its function reached the status of a board or commission that to act legally must comply with the sunshine law."

Both Florida Courts were of the view that the committee was not merely supplying town council with information from which to formulate policy, but were presenting policy upon which the council would act. While the town council might reserve to itself final authority to approve or disapprove the plan, it was contemplated that part of the comprehensive zoning code submitted, if not substantially all of it, would be approved. The Florida Courts held that de facto decision-making resided with the committee.

Other jurisdictions have considered the open meeting laws. *McLarty v. Board of Regents of the University System of Georgia*, 231 Ga. 22, 200 S.E.2d 117 (1973); *Washington School Dist. No. 6 v. Superior Court*, 112 Ariz. 335, 541 P.2d 1137 (1975). *McLarty*, supra, involved a faculty and student committee formed for the purpose of reviewing the student government's proposed allocation of student activity funds. In considering whether the faculty student

advisory committee was subject to Georgia's open meeting law, the court held:

> "The 'Sunshine Law' does not encompass the innumerable groups which are organized and meet for the purpose of collecting information, making recommendations, and rendering advice but which have no authority to make governmental decisions and act for the State. What the law seeks to eliminate are closed meetings which engender in the people a distrust of its officials who are clothed with the power to act in their name. It declares that the people, who possess ultimate sovereignty under our form of government, are entitled to observe the actions of those described bodies when exercising the power delegated to them to act on behalf of the people in the name of the State. There is no such compelling reason to require public meetings of advisory groups. They can take no official action. Generally their reports are submitted in writing well in advance of any official action and are considered by the official body in public meeting."

*McLarty,* supra, was cited as primary authority for the decision of the Arizona Court in *Washington School Dist. No. 6,* supra, wherein it was held that Arizona's open meeting law did not apply to a teacher-layman Textbook Evaluation Committee which was empaneled to act in an advisory capacity. The Textbook Committee was charged with the responsibility of examining the potential subject materials in each subject area and submitting a list of seven recommended books in each field. This information, together with input from other groups not formally organized and private citizens, was used to compile the list of classroom materials from which teachers in the district could choose. The Arizona Court considered the *Town of Palm Beach v. Gradison,* supra, and found that "Florida has a statute providing that the meetings of any state agency are declared to be public meetings and open to the public." That Court determined that the Textbook Evaluation committee did not come within the Arizona "Open Meeting Law", which was applicable only to "governing bodies".

In *Greene v. Athletic Council of Iowa State University,* Iowa, 251 N.W.2d 559 (1977), the Iowa Court held that an Athletic Council, consisting of faculty, alumni and student representatives, which was established by administrative officials to manage and control intercollegiate athletic programs at the university, was vested with the responsibility to determine the athletes who would receive letters, scholarships and awards, and which exercised the powers of the regents in directing intercollegiate athletic programs, was subject to the Iowa open meeting laws.

Although there is a distinction between the Iowa and Oklahoma open meeting laws, the athletic council in *Greene,* supra, exercised governmental powers and exercised decision-making authority in directing and administering the intercollegiate athletics at the university. In the case at bar, the Citizen's Advisory Committee exercises no governmental powers or decision-making authority whatsoever.

Although different courts must construe different statutory provisions, it appears that the majority of other jurisdictions have generally held that ad hoc committees or citizens advisory committees, empaneled for the purpose of furnishing information and recommendations to governing or decision-making entities, are not subject to the open meeting laws unless they have actual, or de facto decision-making authority. Our own "open meeting law", 25 O.S.1971, § 201, prior to its repeal, included all meetings of the governing bodies of all municipalities, boards of county commissioners, boards of public and higher education, and all other boards, bureaus, commissions, agencies, trusteeships or authorities in the State of Oklahoma supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public properties. An executive session was authorized to discuss employment, hiring, etc., but "any vote or actions thereon must be taken in public meeting with the vote of each member publicly cast and recorded."

We can see no legal distinction between the circumstances in the case at bar, i. e., the Citizens' Advisory Committee being empaneled by the Department and submitting its evaluations and reports to the Department for the Department's recommendations to the Board, and such committee being empaneled by Board and submitting its evaluations and reports directly to Board. Therefore, we will assume we have only two entities involved, the parent-entity, the Board, which had the responsibility and the decisional authority to select a Community Treatment Center; and the subordinate entity, the Citizens' Advisory Committee, which was empaneled to furnish information and lend its assistance to the Board in evaluating the different proposed sites. The advisory committee is referred to as a subordinate entity because it was not established by statute and had no statutory authority and whatever authority it did have, actual or de facto, was through its parent-entity, the Board of Corrections.

In examining sec. 201, supra, it is clear the Legislature did not intend to open for public scrutiny the meetings of governing public bodies and public entities with decision-making authority, such as the Board of Corrections, and other parent-entities and leave in the dark the meetings of subordinate entities which were established by their parent-entities for the purpose of exercising decision-making authority for and on behalf of its parent-entity. *Arkansas Gazette Company v. Pickens*, 258 Ark. 69, 522 S.W.2d 350 (1977). By the same token, sec. 201, supra, may not be interpreted as subjecting all subordinate entities, whatever may have been their purpose or authority, to the open meeting laws. Unless the subordinate entity had some decision-making authority, either actual or de facto, it would not come within the purview of sec. 201, supra.

Where a parent-entity, coming within the purview of § 201 as a matter of law, establishes a subordinate entity and such subordinate entity's authority is derived solely through its parent-entity, the question of whether the subordinate entity may also come within the purview of § 201 depends upon the purpose for which it was established and the responsibilities it exercises. If the subordinate entity in the performance of its assigned duties and responsibilities exercises actual or de facto decision-making authority, it must comply with the open meetings law. Under such circumstances, the fact the subordinate entity may or may not be supported in whole or in part by public funds would not be controlling. In the absence of any exercise of actual or de facto decision-making authority by the subordinate entity, as for example in the performance of purely administrative or ministerial tasks, the provisions of § 201 are not called into play. Here also, any consideration of whether the subordinate entity is or is not supported in whole or in part by public funds would not be controlling. Full or partial publicly funded support is one of the criteria used to determine which parent-entities, not otherwise defined by express language in § 201 or within its terms as a matter of law by reason of their constitutional or statutory origin, would come within the purview of the open meetings law.

In the case at bar, the parent-entity is the Board of Corrections, an entity coming within the purview of sec. 201 as a matter of law by reason of its statutory origin. The Citizens' Advisory Committee is a subordinate entity of the Board of Corrections and whether it is within the terms of sec. 201 depends on the authority it may exercise and not on the basis of the source of its financial support. The record amply supports the trial court's finding that the committee had neither actual or implied authority to select the site for the Community Treatment Center.

This case is clearly distinguishable from *Carl v. Board of Regents of the University of Oklahoma*, Okl., 577 P.2d 912 (1978), promulgated this date. *Carl* holds that the Admissions Board of the College of Medicine of the University of Oklahoma, which selected who would be admitted as medical students to the College of Medicine, was within the purview of § 201, supra. There

we determined that the Board of Regents of the University of Oklahoma was a "board of higher education" and subject to § 201, supra, as a matter of law. The Board of Regents was charged with the responsibility of selecting the students who would be admitted to the College of Medicine, which authority they expressly delegated to the Admissions Board. The Admissions Board alone exercised the authority and responsibility for selecting medical students from among the applicants. Our holding that the Admissions Board was subject to § 201, supra, was based on a determination that the subordinate entity (the Admissions Board) exercised actual decision-making authority expressly delegated to it by its parent-entity (The Board of Regents), and as such, the subordinate entity was subject to the "Open Meeting Laws" when performing those decision-making duties. In the case at bar, the Citizens' Advisory Committee is subordinate entity of a parent-entity coming within the purview of § 201, supra, but the Citizens' Advisory Committee does not come under the rule announced in *Carl*, supra, because it was not delegated any decision-making authority either actual or de facto.

We hold that the Citizens' Advisory Committee was not within the purview of 25 O.S.1971, § 201, and the trial court correctly rendered judgment for appellee.

JUDGMENT AFFIRMED.

All the Justices concur.