## The INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 2479, Appellant,

v.

Gene THORPE, City Manager of Ponca City, Oklahoma and City Commissioners of the City of Ponca City, Oklahoma and the City of Ponca City, Oklahoma, Appellees.

No. 53953.

Supreme Court of Oklahoma.

July 28, 1981.

Catherine Gatchell Naifeh, Moore, Foster, Woods & Gatchell, Oklahoma City, for appellant.

C. Marland Johnson, Ponca City, for appellees.

DOOLIN, Justice.

We are called upon today to resolve the issue of whether collective bargaining negotiations between a City Manager and the Firefighters Local fall within the Oklahoma Open Meeting Law.[1] We hold that these negotiations do not fall within the Open Meeting Law.

The firefighters' bargaining agent (Bargaining Agent) insisted that the negotiations be open to the public, while the City Manager refused to meet and confer in an

---

**1.** The pertinent portions of the Oklahoma Open Meeting Law are as follows: 25 O.S.Supp.1977 § 303: "All meetings of public bodies, as defined hereinafter, shall be held at specified times and places which are convenient to the public and shall be open to the public..."

25 O.S.Supp.1977 § 304: "As used in this act: 1. 'Public body' means the governing bodies of all municipalities located within the State of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts, task forces or study groups in the State of Oklahoma supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body. It shall not mean the state judiciary or the State Legislature or administrative staffs of public bodies, including, but not limited to, faculty meetings and athletic staff meetings of institutions of higher education, when said staffs are not meeting with the public body. 2. 'Meeting' means the conducting of business of a public body by a majority of its members being personally together."

open meeting. The City Manager had no authority to make binding agreements without consulting the City Council, nor did the Bargaining Agent have authority to make such an agreement without Union membership approval. The Bargaining Agent filed an application in the district court for issuance of Alternative Writs of Mandamus against the City Manager, the Board of City Commissioners and the City of Ponca City to require them or their individual designee to conduct collective bargaining negotiation sessions with the recognized bargaining agent in open meeting. The district judge refused to grant the writ against the City Manager, but granted the writs against the Board of City Commissioners and the City of Ponca City if the sessions were conducted by *more than one* member of the Board of City Commissioners, or *more than one* designated representative of the Board. It is from the denial of the writ against the City Manager that the Bargaining Agent appeals.

The trial court relied heavily on an Oklahoma Attorney General's Opinion which, in considering a situation identical to the case at bar, held that the City Manager was not a committee, task force or study group within the meaning of 25 O.S.Supp.1977 § 304,[2] and therefore was free to negotiate in closed sessions. Attorney General's Opinion 77–260 states:

> From a reading of the foregoing definitions contained in the Oklahoma Open Meeting Act (25 O.S.Supp.1977 § 304), it is obvious that a "public body" is considered to be made up of more than one individual person, and that "meetings" referred to in the Act encompass meetings wherein a majority of the members of a public body are personally together. Thus an individual city manager or his or her individual designee would not appear to be a "public body" within the meaning of the Act, nor would collective bargain-

ing sessions between an individual city manager or his or her designee, and the representatives of employees would not be "meetings" within the contemplation of the Act.

It would, therefore, follow that collective bargaining negotiation sessions held only between a city manager, or his or her designee, and the representatives of employees would not be "meetings of a public body" within the purview of the Oklahoma Open Meeting Act.

Bargaining Agent contends that the Attorney General erroneously focused on the composition of the negotiating group and defined the group as *one* public official, ignoring the employees' bargaining agent. We believe Bargaining Agent is correct, and that the opinion erroneously failed to consider the private individuals who were involved in the bargaining process. But we decline to turn our discussion on this point.

■ Whether the individuals who composed the group were private citizens or public officials or employees has not been a distinguishing factor in previous cases.[3] The key consideration should be the public nature of the work of the group. The municipality is statutorily obligated to engage in fact-finding and negotiations with the representatives of the firefighters.[4]

■ The usual meaning of the words "committees," "task forces" and "study groups" denotes a group of individuals, working together on a specific project or general goal. We hold that the City Manager and the Bargaining Agent negotiating together are clearly included as a committee, task force or study group. Although this may not be what is traditionally thought of as a committee, task force or study group, clearly the function of the meetings between the City Manager and the Bargaining Agent is the same as that of meetings of more traditional committees, task forces, or study groups.

---

2. Supra, Note 1.

3. *Sanders v. Benton*, 579 P.2d 815 (Okl.1978); *Carl v. Board of Regents of University of Oklahoma*, 577 P.2d 912 (Okl.1978).

4. 11 O.S.Supp.1977 § 51–105 provides: "It shall be the obligation of the municipality, acting through its corporate authorities, to meet at reasonable times and confer in good faith with the representatives of the firefighters . . ."

■ The Open Meeting Law, because it is enacted for the public's benefit, is to be construed liberally in favor of the public.[5]

■ Bargaining Agent urges that this situation falls within the rule announced in *Sanders v. Benton.*[6] *Sanders* involved a Citizen's Advisory Committee which was to furnish information, evaluations and recommendations to the Board of Corrections for a proposed location of a Community Treatment Center. This Court held that Oklahoma's pre-1977 Open Meeting Law (25 O.S. 1971 § 201) did not encompass the *Sanders* situation, because the Committee had no decision-making authority, either actual or de facto. *Sanders* holds:

Where a parent entity, coming within the purview of § 201 as a matter of law, establishes a subordinate entity and such subordinate entity and subordinate entity's authority is derived solely through its parent entity, the question of whether the subordinate entity may also come within the purview of § 201 depends upon the purpose for which it was established and the responsibilities it exercises. If the subordinate entity in the performance of its assigned duties and responsibilities exercises actual or de facto decision-making authority, it must comply with the open meetings law . . . .

In the absence of any exercise of actual or de facto decision-making authority by the subordinate entity, as for example in the performance of purely administrative or ministerial tasks, the provisions of § 201 are not called into play.[7]

The *Sanders* rule, stated above, regarding subordinate entities and their authority, continues to apply to the present Open Meeting Law, even though *Sanders* construed 25 O.S.1971 § 201; 1977 changes merely added several new categories to the definition of "public body."

The City Manager testified he would make an offer, receive a counter-offer and would take the counter-offer back to the City Commissioners for additional guidance to be pursued at the next negotiating session; the City Commissioners had complete authority to approve or disapprove all portions of the proposed contract, including monetary matters and non-monetary matters such as working conditions. The City Manager merely makes recommendations to the City Commissioners and the City Commissioners give line-by-line attention to the approval of the budget, including the appropriations for the contract. In the previous year, not all of the City Manager's recommendations being negotiated were approved. Thereafter the City Commissioners consider the proposed contract in open session.

■ Bargaining Agent asks us to extend the rule announced in *Sanders* to cover an individual who has the responsibility of negotiation, but who has no authority, either express or de facto, to make binding agreements. We decline to do so, because we believe the Legislature did not intend by the 1977 changes to expand the *Sanders* doctrine. When the Open Meeting Law was revised in 1977, an amendment was introduced on the Senate floor which would have added the following to the definition of "public body" contained in § 304:

". . . advisory groups, advisory committees, or persons appointed to advise, consult or make recommendations for any board, bureau, commission, agency, task force or study group . . ."

thus broadening the coverage of the Open Meeting Law to groups, committees, etc.

This amendment was adopted by the Senate, but was rejected by the House in Conference Committee. The final version of the revised Open Meeting Law does not contain this broadening amendment. We

5. *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968); *Board of Public Instruction v. Doran*, 224 So.2d 693 (Fla.1969); *Bagby v. School District #1*, Denver, 186 Colo. 428, 528 P.2d 1299 (1974); *Wexford County Prosecuting Attorney v. Pranger*, 83 Mich.App. 197, 268 N.W.2d 344 (1978).

6. *Sanders v. Benton*, 579 P.2d 815 (Okl.1978).

7. Ibid. pg. 820.

conclude the Bargaining Committee's interpretation of *Sanders* is not supported.

We hold open meetings are mandated when the city commission considers and approves individual contract items as well as the contract as a package and, if the city manager has authority to bind the city commission on any issue, that portion of the contract negotiations must also be open to the public. Otherwise the city manager is not required to conduct public negotiations, for in the absence of meaningful decision-making authority the negotiations do not fall under the requirements of the Open Meeting Laws.

AFFIRMED.

All the Justices concur.