Dear Representative Hilliard,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Are private organizations (either for-profit or non-profit)which contract to provide goods or services to the public onbehalf of a governmental agency subject to the requirements ofthe Oklahoma Open Meeting Act, 25 O.S. 2001, §§ 301-314,absent some specific obligation to that effect in the contract?
¶ 1 For an entity to be subject to the Open Meeting Act ("Act"), 25 O.S. 2001, §§ 301-314, it must be a "public body" as defined by the Act. The Act defines public body in pertinent part as follows:
 "Public body" means the governing bodies of all municipalities located within this state, boards of county commissioners of the counties in this state, boards of public and higher education in this state and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts or any entity created by a public trust, task forces or study groups in this state supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body.
Id. § 304(1) (emphasis added).
¶ 2 Although private for-profit and non-profit organizations are not mentioned in Section 304's definition of public body, that does not necessarily prevent the Act from applying to private organizations. There are at least two situations in which a private organization will be subject to the Act: (1) if the private organization is a "subordinate entity" which exercises actual or de facto decision-making authority on behalf of a governmental body; or (2) if the private organization is "supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property."Id. We will analyze each possibility in turn.
 Subordinate Entities Which Exercise Actual Or De Facto Decision-Making Authority
¶ 3 The Oklahoma Supreme Court has construed the Act to apply to subordinate entities which exercise actual or de facto decision-making authority on behalf of a governmental body.Sanders v. Benton, 579 P.2d 815, 820 (Okla. 1978). InSanders, the court considered whether a Citizens' Advisory Committee which furnished information and made recommendations to a governmental body (the Board of Corrections) must make its meetings open to the public. The court referred to the committee as a "subordinate entity" because it was created by a governmental body and "was not established by statute and had no statutory authority and whatever authority it did have, actual or de facto, was through its parent-entity, the Board of Corrections." Id.
¶ 4 The court announced the rule for determining whether subordinate entities are subject to the Act as follows:
 Where a parent-entity, coming within the purview of [the Act] as a matter of law, establishes a subordinate entity and such subordinate entity's authority is derived solely through its parent-entity, the question of whether the subordinate entity may also come within the purview of [the Act] depends upon the purpose for which it was established and the responsibilities it exercises. If the subordinate entity in the performance of its assigned duties and responsibilities exercises actual or de facto decision-making authority, it must comply with the open meetings law. . . . In the absence of any exercise of actual or de facto decision-making authority by the subordinate entity, as for example in the performance of purely administrative or ministerial tasks, the provisions of [the Act] are not called into play.
Id.
¶ 5 A subordinate entity, therefore, is subject to the Act if: (1) it was established by an entity which is itself subject to the Act; and (2) it exercises actual or de facto decision-making authority on behalf of its parent-entity. The court noted that in this situation, whether the subordinate entity is supported in whole or in part by public funds is not controlling:
 Full or partial publicly funded support is one of the criteria used to determine which parent-entities, not otherwise defined by express language in [the Act] or within its terms as a matter of law by reason of their constitutional or statutory origin, would come within the purview of the open meetings law. . . .
 . . . The Citizens' Advisory Committee is a subordinate entity of the Board of Corrections and whether it is within the terms of [the Act] depends on the authority it may exercise and not on the basis of the source of its financial support.
Id.
¶ 6 Although the Act was subsequently amended, the court affirmed that the Sanders rule regarding subordinate entities and their authority continued to apply. Int'l Ass'n ofFirefighters Local 2479 v. Thorpe, 632 P.2d 408, 411 (Okla. 1981).
¶ 7 This issue was considered previously in Attorney General Opinion 80-215.[1] That Opinion applied the rule announced in Sanders, which dealt only with subordinate entities, to private organizations which were not established by any governmental body. Opinion 80-215 concluded that a corporation which "exercis[es] delegated public functions or [actual or de facto] decision-making authority" is subject to the Act if it is "supported in whole or in part by public funds or entrusted with the expending of public funds." Id. at 367.
¶ 8 Opinion 80-215 was in error because an inquiry as to whether an entity exercises decision-making authority is only appropriate when applied to subordinate entities established by parent-entities which are themselves subject to the Act, not to private corporations which are not subordinate entities.Sanders, 579 P.2d at 820. Opinion 80-215 did correctly conclude, however, that the private organization in question was both supported by public funds and administered public property and was therefore subject to the Act. Attorney General Opinion 80-215 is therefore modified only to the extent that it mistakenly applied the Sanders "decision-making authority" test to private organizations which were not "subordinate entities."
 Private Organizations Which are Supported by Public Funds, Expend Public Funds, or Administer Public Property
¶ 9 Private organizations which are not subordinate entities as defined in Sanders may qualify as "parent-entities, not otherwise defined by express language in [the Act] or within its terms as a matter of law by reason of their constitutional or statutory origin." Sanders, 579 P.2d at 820. The test in this situation is whether the private organization is "supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public propert[y]", and therefore subject to the Act. Id. at 819; 25 O.S. 2001, §304[25-304] (1). As the court said in Sanders,
 Full or partial publicly funded support is one of the criteria used to determine which parent-entities, not otherwise defined by express language in [the Act] or within its terms as a matter of law by reason of their constitutional or statutory origin, would come within the purview of the open meetings law.
Sanders, 579 P.2d at 820.
¶ 10 Regarding "supported in whole or in part by public funds," the Act does not define "supported." 25 O.S. 2001, § 304[25-304] (1). In such cases, we apply the ordinary meaning of the word. 25 O.S.2001, § 1[25-1]. Support is defined as "to pay the costs of: maintain." Webster's Third New International Dictionary 2297 (3d ed. 1993). "Ordinarily, support by public funds is evidenced by a legislative enactment, either a direct appropriation or an authorization to a governmental unit to directly transfer public funds or tax revenues to another entity for a public purpose."Adams County Record v. Greater North Dakota Ass'n,529 N.W.2d 830, 843 (N.D. 1995) (Meschke, J., dissenting).
¶ 11 Thus, private organizations which receive appropriations from the legislature or grants of public funds which subsidize their operations would likely qualify as "supported in whole or in part by public funds." 25 O.S. 2001, § 304[25-304](1). You ask, however, about private organizations which contract to provide goods or services to the public on behalf of a governmental agency.
¶ 12 Because the terms of the particular contract between a private organization and a governmental body would affect the answer to your question, we cannot give a definitive answer which applies to all situations. We will, however, attempt to provide general guidance in determining whether a private organization is "supported" by public funds.
¶ 13 For example, a contract between a private organization and a governmental agency may be strictly a reimbursement-for-services (or goods) contract. In the case of reimbursement-for-services, the terms of the contract usually make such an arrangement clear by stating that the private organization will be reimbursed for actual expenses up to a maximum amount for a certain period. To recover its expenses, the private organization submits claims to the governmental agency, detailing the services provided. In such contracts, private organizations provide services in the same way an architect, engineer, or other professional would. Similarly, a private organization may have a reimbursement contract to provide goods to a governmental entity.
¶ 14 In either type of reimbursement contract, the organizations are merely contractors or vendors of goods or services. In some cases, the legislature may appropriate the contract amount to a governmental agency specifically for the purpose of reimbursing a private organization for its goods or services, much as the municipalities appropriated funds to the public trusts for eventual payment to non-profit corporations in A.G. Opin. 80-215. The question is whether receiving payment for goods or services from public funds in the type of reimbursement contracts mentioned above, constitutes being "supported in whole or in part by public funds." 25 O.S. 2001, § 304[25-304] (1).
¶ 15 Although no Oklahoma cases have addressed this question, it has been discussed in cases from other jurisdictions whose sunshine laws are substantially the same as Oklahoma's. These cases have concluded that receiving payment from public funds for performing specific services or providing goods pursuant to a contract is not the same as being "supported" by public funds.See, e.g., State Defender Union Employees v. Legal Aid andDefender Ass'n, 584 N.W.2d 359, 361-62 (Mich.Ct.App. 1998) (distinguishing between "bargained-for exchanges of services or goods for money and public funding," (n. 4 at 362) the court held that a legal aid provider which received more than eighty-five percent of its funding from governmental sources was not funded by the state because "it only received money from governmental entities in exchange for rendering professional services to indigent clients. . . . [F]unded means something other than an exchange of services or goods for money, even if the source of money is a governmental entity."); see also Adams CountyRecord, 529 N.W.2d at 835 ("support means something other than an exchange of services or goods for money, a quid pro quo").
¶ 16 See also Weston v. Carolina Research DevelopmentFoundation, 401 S.E.2d 161,165 (S.C. 1991) (holding that private business enterprises "that receive payment from public bodies in return for supplying specific goods or services on an arms length basis" are not subject to the state's sunshine laws); StateBoard of Accounts v. Indiana University Foundation,647 N.E. 2d 342, 353 (Ind.Ct.App. 1995) (finding that a university foundation was not subject to the sunshine laws because the public funds paid by a state university to the foundation constituted "a fee for services rendered" and that the trustees of the university foundation "received a quid pro quo in sufficiently identifiable and measurable quantities of services for any public expenditures"). Id. at 353-54 (citation omitted).
¶ 17 Thus, private organizations which contract with a governmental body and are reimbursed for identifiable goods or services are not public bodies under the Act. Given the multitude of State contracts issued for both goods and professional services, it cannot be the intent of the Act that every private organization, either for-profit or non-profit, which receives payments for its goods or services from public funds becomes a public body subject to the Act.
¶ 18 Some contractual relationships, however, are not based strictly on reimbursement for goods or services. For example, inIndianapolis Convention Visitors Ass'n v. IndianapolisNewspapers, Inc., 577 N.E.2d 208, 210 n. 2, 213-14 (Ind. 1991), the court held that a private entity established to promote and publicize the city's convention and visitor industry was subject to the state sunshine laws because: (1) the private entity did not submit itemized invoices or claims for services rendered to receive public funds, but instead received a direct allocation of public funds from the local hotel-motel tax, as well as free office and meeting space, furniture, and equipment from a governmental entity; and (2) there was no quid pro quo or direct relationship to the amount of services performed by the private entity and the funds it was allocated, because the entity received funds regardless of whether it performed services.
¶ 19 Oklahoma's Open Meeting Act contains no expression of legislative intent, express or implied, that private organizations which contract to provide goods or services to the public on behalf of a governmental agency become public bodies subject to the Act, merely because they receive payment from public funds for goods provided or services rendered. A contract may, of course, contain a provision which makes a private organization subject to the Act. Whether a specific private organization is "supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property,"(25 O.S. 2001, § 304[25-304] (1)) making it a public body under the Act, is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, §18b[74-18b] (A)(5).
¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Absent a contractual provision to the contrary, privateorganizations (either for-profit or non-profit) which contract toprovide goods or services to the public on behalf of agovernmental agency and receive payment from public funds merelyas reimbursement for goods provided or services rendered, are not"supported" by public funds and therefore are not subject to therequirements of the Oklahoma Open Meeting Act, 25 O.S. 2001, §§301-314.
 2. Private organizations (either for-profit or non-profit) aresubject to the Open Meeting Act, 25 O.S. 2001, §§ 301-314,if:
 A. they do not submit itemized invoices or claims for goodsprovided or services rendered to receive public funds, butinstead receive a direct allocation of public funds from tax orother revenues; and
 B. there is no quid pro quo or direct relationship to theamount of goods provided or services performed by the privateorganizations and the funds they are allocated; i.e., theorganizations receive funds regardless of whether they providegoods or perform services. Indianapolis Convention VisitorsAss'n v. Indianapolis Newspapers, Inc., 577 N.E.2d 208, 210 n.2, 213-14 (Ind. 1991).
 3. Whether any particular private organization is "supportedin whole or in part by public funds or entrusted with theexpending of public funds, or administering public property," (25 O.S. 2001, § 304(1)), making it a public body under theAct, is a question of fact which cannot be answered in anAttorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
 4. Attorney General Opinion 80-215 is hereby modified to theextent it applied the "decision-making authority" test to privateorganizations which were not "subordinate entities" as definedin Sanders v. Benton, 579 P.2d 815 (Okla. 1978).
W.A. DREW EDMONDSON Attorney General Of Oklahoma
DEBRA SCHWARTZ Assistant Attorney General
[1] Attorney General Opinion 80-215 concerned situations in which municipalities annually appropriated funds to public trusts, which in turn paid the funds to private non-profit corporations to operate, maintain, and improve municipality- and trust-owned public property.