2008 OK CIV APP 52

**CITY OF NOWATA,**
**Plaintiff/Appellant/Counter–Appellee,**

v.

**Glenn P. HAMILTON and Tawanda Hamilton, husband and wife, and Glenn R. Hamilton, Defendants/Appellees/Counter–Appellants.**

**No. 104,138.**

Court of Civil Appeals of Oklahoma, Division No. 1.

April 25, 2008.

Charles M. Fox, Nowata, OK, for Plaintiff/Appellant/Counter–Appellee.

Stephen P. Gray, Tulsa, OK, for Defendants/Appellees/Counter–Appellants.

## OPINION

ADAMS, Presiding Judge.

¶ 1 Plaintiff City of Nowata (City) appeals the trial court's *sua sponte* dismissal of its

petition seeking declaratory relief in its controversy with Defendants Glenn P. Hamilton, his wife, Tawanda Hamilton, and their son, Glenn R. Hamilton (collectively, the Hamiltons), or in the alternative to quiet title to "Roberts Street," which runs across the north boundary of the Hamiltons' property. The Hamiltons appeal the same order in which the trial court summarily adjudicated their quiet title and/or inverse condemnation counterclaim against City in its favor. City also appeals a separate trial court order that denied its request for attorney fees and costs and awarded attorney fees and costs to the Hamiltons. We conclude the Hamiltons' appeal was untimely and dismiss it. We reverse the trial court's dismissal of City's claim and the order awarding attorney fees and costs to the Hamiltons, but affirm the trial court's order denying City's request for attorney fees and costs.

## PROCEDURAL HISTORY

¶ 2 After City filed its Petition against the Hamiltons, they filed an Answer and Counterclaim in which they denied, in relevant part, that Roberts Street was a "public street" and that City had utilized and maintained that same street for the previous fifteen years. The Hamiltons asserted numerous affirmative defenses, including failure to state a claim for which relief can be granted, and a counterclaim for quiet title and/or inverse condemnation. City filed a reply, and discovery commenced.

¶ 3 Two years later, City moved for summary judgment, attaching numerous exhibits to support its argument that the Hamiltons had no claim "for any taking that may have occurred by [City]" on Lots 1 and 32 in Block 6 of Health Heights Addition because the Hamiltons were not the original owners during any alleged taking and since that time the various conveyances affecting both lots did not reserve or transfer any "prior claim." Concerning Lot 32 only, City further argued that the owners during the alleged taking lost the property by foreclosure and that judgment barred them or "any person claiming through them" from asserting any right,

title or interest to the foreclosed property. After the Hamiltons timely filed a brief in opposition to City's motion, the trial court filed an order on November 29, 2006, finding City had failed to state a claim for which relief can be granted and its petition was "frivolous," granting City's summary judgment motion on the Hamiltons' counterclaim, and dismissing both City's petition and the Hamilton's counterclaim. City appealed that order, as did the Hamiltons.

¶ 4 Subsequent thereto, both parties requested payment of their attorney fees and costs, and each party objected to the other's request. A different trial judge granted the Hamiltons' request, awarding them $15,000, but denied City's request. City's motion to vacate that order was eventually denied by the trial court. City then amended its Petition in Error seeking review of that order.

## ANALYSIS

### City's Appeal

¶ 5 City argues that the trial court should have analyzed the matter using the rules for summary judgment because the November 29, 2006 Order indicates that the trial court considered evidence outside the pleadings when deciding *sua sponte* to dismiss City's petition for failure to state a claim for relief. We agree.

¶ 6 City attached evidentiary materials to its motion for summary judgment against the Hamiltons' counterclaim, however, when the trial court decided on its own motion to dismiss City's petition for lack of any documentary evidence it considered *other* discovery materials which were clearly outside the pleadings. Neither City nor the Hamiltons were given an opportunity to respond to the trial court's *sua sponte* dismissal.

¶ 7 According to *Washington v. State ex rel. Department of Corrections*, 1996 OK 139, ¶ 7, 915 P.2d 359, 361, 12 O.S.1991 § 2012(B),[1]

> *mandates* that: (1) when a motion to dismiss for failure to state a claim upon which relief can be granted includes matters out-

---

1. Although other portions of § 2012 were amended since 1991, the Legislature made no changes to § 2012(B). *See* 12 O.S.Supp.2004 § 2012(B).

side the pleadings and those matters are not excluded by the court, the motion *shall be treated as one for summary judgment;* and (2) *all of the parties shall be given reasonable opportunity to present all material* made pertinent to such a motion by the rules for summary judgment. (Emphasis added.)

We find no language in § 2012(B) and no case law which suggests that this same statutory mandate should not apply when a trial court acts to dismiss *sua sponte* under § 2012(B) for failure of the petition to state a claim for relief. Accordingly, we must reverse the trial court's dismissal of City's petition in the November 29, 2006 Order, and remand the case for further proceedings on City's claim.

¶ 8 City argues the Hamiltons are not entitled to an award of attorney fees under 12 O.S.Supp.2004 § 2011.1, which allows reimbursement to the prevailing party of reasonable costs, including attorney fees, if a trial court grants, *inter alia,* a motion to dismiss an action and determines that a claim or defense asserted in the action by a non-prevailing party was "frivolous." Our reversal of the trial court's dismissal of City's petition in this case eliminates § 2011.1 as a basis for an attorney fee award, thereby necessitating reversal of the trial court's order awarding $15,000 to the Hamiltons for attorney fees.

¶ 9 City further argues that the trial court erred by denying its request for payment of its attorney fees. It claims entitlement as the prevailing party on the Hamiltons' inverse condemnation claim, 66 O.S. 2001 § 55, and under 27 O.S.2001 § 12 and the 14th Amendment to the U.S. Constitution.

¶ 10 Neither of the statutes cited by City entitle it to attorney fees. The first provision, 66 O.S.2001 § 55, allows attorney fees under certain circumstances in a condemnation case. This is not a condemnation case. The second provision, 27 O.S.2001 § 12, which addresses attorney fees in cases for *inverse condemnation,* applies to the Hamiltons' counterclaim. However, § 12 only allows a prevailing *landowner* who brings the inverse condemnation case to be reimbursed for reasonable costs, including attorney fees. *See Oxley v. City of Tulsa, By and Through Tulsa Airport Authority,* 1989 OK 166, 794 P.2d 742.

¶ 11 City does not elaborate on its claim that the 14th Amendment to the United States Constitution requires an attorney fee award for prevailing on the Hamiltons' counterclaim. It does not identify the basis for that assertion, and we need not address it. "Appellate courts cannot be forced to become an active advocate for the party whose failure to brief or argue has produced a total intellectual vacuum for that party's asserted position." *Fent v. Contingency Review Board,* 2007 OK 27, ¶ 23, 163 P.3d 512, 525.[2]

### The Hamiltons' Counter–Appeal

¶ 12 The trial court's order dismissing the Hamiltons' counterclaim was filed on November 29, 2006. The Hamiltons commenced their appeal from that order by filing a Petition in Error designated as a "Cross Petition"[3] on January 16, 2007. Because it was filed beyond the time allowed for filing a counter-appeal provided by Okla.Sup.Ct.R. 1.27(a), which would have required their Petition in Error to be filed on or before January 8, 2007, we issued an order requiring the Hamiltons to show cause why their counter-appeal should not be dismissed.

---

2. If we presume that City believes "equal protection" requires § 12 to apply equally to it, such an argument faces a dubious chance of success. A municipality, a political subdivision of the state, may not invoke the protection of the equal protection clause against an act of the state legislature. *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933); *Carl v. Board of Regents of University of Oklahoma,* 1978 OK 49, 577 P.2d 912.

3. Because it was an appeal requesting relief against the appellant rather than another appellee, the Hamiltons' Petition in Error should have been designated as a "Counter–Petition." *See* the discussion of the distinction between a "cross" filing and "counter" filing by Justice Opala, at footnote 4 of his opinion "concurring in result in Parts I and II(a) and generally in the remainder" in *Spears v. Preble,* 1983 OK 8, 661 P.2d 1337.

¶ 13 The Hamiltons responded and conceded that their Petition in Error was filed too late. However, they argue we should allow their counter-appeal to proceed upon equitable considerations because they complied with the "spirit of the law." Based on the explicit language of the rules adopted by the Oklahoma Supreme Court, we may not do so.

¶ 14 When it adopted what is now 12 O.S. 2001 § 990.1, effective November 1, 1984, the Legislature specifically empowered the Oklahoma Supreme Court to prescribe by rule the time limits for filing counter-appeals and cross-appeals. This section also provides:

> When a petition in error is timely filed, the Supreme Court shall have jurisdiction of the entire action that is the subject of the appeal. No additional jurisdictional steps shall be necessary to enable the Supreme Court to rule upon any errors made in the trial of the action which are asserted by any party to the appeal and involve any other party to the appeal.

Based on this language, it might well be argued that the timely filing of a petition in error which constitutes a counter-appeal is not jurisdictional, particularly where the alleged errors were "made in the trial of the action." [4]

¶ 15 However, even if timely filing is not jurisdictional, the Oklahoma Supreme Court, exercising the rule-making authority granted in this statute, has determined that the "interval allowed for filing a petition in error may not be extended by either the district court or the Supreme Court." Okla.Sup. Ct.R. 1.21(a). This language follows in the same paragraph and immediately after the statement, "For cross or multiple appeals Rule 1.27 is applicable."

¶ 16 Okla.Sup.Ct.R 1.27(a) provides:

**Cross–Appeal or Counter–Appeal.** If a petition in error has been timely filed to commence an appeal from an appealable decision, then a party aggrieved by the same decision may file a petition in error within forty (40) days of the date the judgment was filed with the district court clerk.

Based on the language of these rules, we can only conclude the Oklahoma Supreme Court determined that a counter-appeal could proceed only if the petition in error commencing that counter-appeal was filed within the interval provided by the rules.

¶ 17 The Hamiltons' petition in error commencing their counter-appeal was not filed within that interval, and consistent with the rules adopted by the Oklahoma Supreme Court, we cannot extend that time. The Hamiltons' counter-appeal is dismissed.

## CONCLUSION

¶ 18 The trial court's order dismissing City's claim against the Hamiltons is reversed along with the order awarding the Hamiltons attorney fees and costs. The trial court's decision denying City an award of attorney fees and costs on the Hamiltons' counterclaim is affirmed. The Hamiltons' appeal from the judgment in City's favor on their counterclaim is dismissed, and that judgment stands undisturbed. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, DISMISSED IN PART AND REMANDED.

HANSEN, J., and JOPLIN, J., concur.

---

4. The statute appears to be silent on errors that did not occur during trial.